MOFFETT et al. v. EMPLOYERS' LIABILITY ASSUR. CORPORATION, Limited. *
(No. 8854.)

(Court of Civil Appeals of Texas. Galveston. May 7, 1926. Rehearing Denied June 10, 1926.)

1. Pleading ⟜421—Defendants held entitled to raise issue of estoppel to deny agency for insurer by allegation thereof in pleading termed by them supplemental cross-petition, and not objected to.

Defendants, in suit of insurer to set aside award of Industrial Accident Board on ground that employer was not insured by it, *held* entitled to raise issue that insurer was estopped to deny authority of its agent to verbally agree that employer was insured by allegation of such estoppel in pleading termed by them a supplemental cross-petition, and to which objection was not made.

2. Insurance ⟜144(2)—Insurer held not estopped to deny new firm was insured because of assurance of local agent that change would be made, though on a prior occasion general agent had made change, and insurer had ratified it.

Though, on change in membership of firm having compensation insurance policy, requiring consent to assignment of interest, and prohibiting waiver or alteration except by indorsement of insurer's manager, the general state agent, on application through the local agent, changed the policy by indorsement, and insurer ratified this, insurer is not estopped to deny that a still later firm, caused by change in the second firm, was insured by such policy, because on application to the local agent for change he assured applicant that such change would be made, where authority to make any such changes had in the meantime been withdrawn from general agents.

3. Insurance ⟜144(1).

Temporary retention, during investigation of case and pending litigation, of premiums sent to general state agent after loss *held* not to estop insurer to deny that there had been any change of party insured by compensation insurance policy.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by the Employers' Liability Assurance Corporation, Limited, against Mrs. Lorena Moffett and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Woods, King & John, of Houston, for appellants.

Vinson, Elkins, Sweeton & Weems and Fred R. Switzer, all of Houston, for appellee.

GRAVES, J. A concededly correct statement of the nature and result of the suit is thus made in appellants' brief:

"This is a suit brought by appellee, assurance corporation, to set aside an award of the Industrial Accident Board by reason of the death of C. Moffett, while employed by Simmons & Pearce, in Caldwell county, Tex., on May 15, 1924, the said death growing out of, and incident to, the said Moffett's line of employment, the basis of the Industrial Accident Board's award being that Simmons & Pearce, a copartnership composed of W. J. or Joe Simmons and W. B. Pearce, had taken out compensation insurance with appellee. Appellee's petition denied that the insurance policy was in effect, or that it was liable for any compensation on account of the death of the said Moffett, the said petition setting up the award, the basis for the award, denying its justice, and praying that on final hearing the award be set aside, and that appellee have judgment to the effect that appellants take nothing.

"Appellants, the statutory beneficiaries of C. Moffett, deceased, filed an answer, denying generally the allegations of appellee's petition, and likewise filed a cross-petition setting up their

---

beneficial interest under the Compensation Act (Vernon's Ann. Civ. St. 1925, arts. 8306–8309), alleging the death of C. Moffett while in the employment of Simmons & Pearce, said death growing out of, and being incident to, his said employment, alleging that Simmons & Pearce had in full force and effect a compensation policy with appellee, covering the death of the said C. Moffett, setting forth the extent of their beneficial interest and the amount they claimed the right to recover, and, by an alternative allegation, setting forth that Simmons & Pearce, if they did not have a policy with appellee, had paid premiums to the duly authorized agent of appellee, who gave them a verbal contract of insurance, that the premiums were retained by appellee, and that appellee ratified the agent's verbal contract.

"By supplemental petition, appellee denied the allegations of the foregoing cross-petition, and specially answered, saying that the policy of insurance declared on by appellants was not in force and effect as applied to the said C. Moffett, but that the same was for the benefit of the employés of the copartnership of Crosby, McDaniels, and Simmons, the employers, a firm composed of one Crosby, D. B. McDaniels, and Joe Simmons.

" 'That at the time of the alleged injury the said Clifford Moffett was not employed by the firm of Crosby, McDaniels & Simmons, named as employers in the said policy of insurance on that date, but was employed by the copartnership of Simmons & Pearce, composed of Joe Simmons and W. B. Pearce.

" 'That the copartnership of Crosby, McDaniels & Simmons, designated as employers in the said policy at the time of said injury, had for many months prior thereto been wholly dissolved.

" 'That the said policy of insurance in which the said firm of Crosby, McDaniels & Simmons was insured as employers contained the following provisions:

" ' "I. No assignment of interest under this policy shall bind the corporation, unless the consent of the corporation shall be indorsed hereon."

" ' "L. No condition or provision of this policy shall be waived or altered except by an indorsement attached hereto, signed by the manager and attorney of the corporation, nor shall notice to any agent, nor shall knowledge possessed by any agent or by any other person, be held to effect a waiver or change in any part of this contract. Changes in the written portion of the declarations forming part hereof (except items 2, 3, and 4) may be made by the agent countersigning this policy, such changes to bind the corporation when initialed by such agent. The personal pronoun herein used to refer to this employer, or to an injured employé or dependents, shall apply regardless of number or gender."

" 'That this plaintiff never did consent to the assignment of any interest under this policy from the employers, Crosby, McDaniels & Simmons, to Simmons & Pearce, and there was never indorsed on said policy any assignment of such interest, and there was never any change in any part of the declaration of said policy initialed or consented to by the agent countersigning said policy.

" 'And this plaintiff never agreed or promised or contracted to pay any sum or compensation to any employé of the firm of Simmons & Pearce.'

" '(3) And this plaintiff would further show unto the court that, if any person or persons purported to represent or act on behalf of this plaintiff, undertook to make an assignment of any interest of said policy, or to make any indorsement thereon changing the employers from Crosby, McDaniels & Simmons to Simmons & Pearce, or undertook or promised in any way on behalf of this plaintiff to pay any sum of insurance to any employé of the employer, Simmons & Pearce, all of said acts by such person or persons had no right or power to do or perform any such act or make any such promise or contract on behalf of this plaintiff.'

"Appellants replied with a general denial of the allegations of the foregoing supplemental petition, and alleged further:

" 'II. Heretofore, to wit, on or about the 17th day of July, 1923, plaintiff issued to D. B. McDaniels and Joe Simmons a certain policy No. W C (U) 215456, the same being known generally as a workmen's compensation policy, to wit, a policy issued by an authorized insurance carrier doing business in Texas, and authorized to issue insurance to employers under what is commonly known as the Workmen's Compensation Law of the state of Texas, the said policy providing in substance that plaintiff would pay compensation claims of the employés of said D. B. McDaniels and Joe Simmons for a period extending beyond the 15th day of May, A. D. 1924, arising under the Workmen's Compensation Law of the state of Texas.

" 'III. That thereafter, and while this said policy was in full force and effect, and on or before the 12th day of November, 1923, L. V. Majors, the local agent of plaintiff at Corsicana, Tex., was requested by the firm of Crosby, McDaniels & Simmons, business successors of D. B. McDaniels and Joe Simmons, to have the policy above described indorsed showing the change in the business name and composition of the insured, and the said L. V. Majors undertook with the said Joe Simmons to cause the plaintiff to make such indorsement, and plaintiff did, on or about the 12th day of November, 1923, cause an indorsement to be made upon the said policy so that thereafter it would cover and be insurance for the firm of Crosby, McDaniels & Simmons, composed of one Crosby D. B. McDaniels, and Joe Simmons.

" 'IV. That thereafter, on or before the 8th day of May, 1924, and during the life of the policy first above described, Joe Simmons, as he is commonly known, and whose name, using initials, is likewise W. J. Simmons, applied to L. V. Majors, as local agent of plaintiff at Corsicana, Tex., for a further indorsement on the policy above described to the end that the said policy would cover and provide insurance according to its terms for the firm of Simmons & Pearce, a copartnership composed of Joe Simmons and W. B. Pearce, and the said L. V. Majors informed the said Joe Simmons, or W. J. Simmons, who was acting for his said copartnership of Simmons & Pearce, that said indorsement would be made, and that he was then covered by said policy under the name of Simmons & Pearce, as he had been under the name of Crosby, McDaniels & Simmons, and that said policy covered the operations of said copartnership of Simmons & Pearce anywhere in the state of Texas.

" 'V. That at the time of said agreement between said W. J. Simmons, or Joe Simmons, and the said L. V. Majors, as above alleged, D. B. McDaniels and Joe Simmons had theretofore paid to plaintiff herein a cash advance, or premium deposit, in the sum of $100, which sum had through all firm changes continued to be, and was at that time, held and retained by plaintiff, and to the return of which the said firm of Crosby, McDaniels & Simmons, or its successor or successors, was entitled should the said policy be canceled or terminated.

" 'VI. That plaintiff herein retained the said cash advance or premium deposit in the sum of $100 after being notified by the said L. V. Majors that indorsement changing the name of insured under said policy to Simmons & Pearce had been duly requested, and has continued to retain said sum of $100 unto this day for its own use and benefit.

" 'VII. Cross-plaintiffs further allege that Simmons & Pearce paid to L. V. Majors, as premiums accruing under the terms of said policy on or about the 10th day of May, 1924, the sum of $73.63, and on or about the 6th day of June, 1924, the sum of $240.07, which· said sums, and each of them, were by the said L. V. Majors paid over to plaintiff herein, after plaintiff was on notice as alleged in the preceding paragraph, and said sums have been retained and used by said plaintiff, and have not been repaid by plaintiff to the said firm of Simmons & Pearce, or returned to the said L. V. Majors at any time.

" 'VIII. That the firm of Simmons & Pearce, acting through a member thereof, to wit, W. J. Simmons, or Joe Simmons, believed at the time of the agreement between the said firm and L. V. Majors, as above alleged, that the said L. V. Majors had authority to make said agreement as an agent of plaintiff and cross-defendant herein, and relied upon said authority and the said agreement, and, but for their said belief and reliance, would have taken out a policy of insurance at once, and as early as May 8, 1924, covering the said firm of Simmons & Pearce under the Workmen's Compensation Law of the state of Texas, and would have demanded and been entitled to receive back from plaintiff and cross-defendant the $100 cash deposit as hereinabove described.

" 'IX. Defendants and cross-plaintiffs allege that the said L. V. Majors was in truth and in fact the local agent of plaintiff and cross-defendant at Corsicana, Tex., with authority, or with apparent authority, to make the agreement as above described; and, if cross-plaintiffs be mistaken in their allegation that he had such authority, or apparent authority, then they allege that plaintiff and cross-defendant, constantly and continually until and long after the 8th day of May, 1924, addressed the said L. V. Majors as agent by letters and otherwise, and sent its auditors to audit the office of said L. V. Majors as if a local office of plaintiff and cross-defendant, and employed and used the said L. V. Majors as a local agent in collecting premiums, making payments accruing under other policies of like character as that hereinabove described, and otherwise in doing its local work at Corsicana, Tex., and gave him the full appearance of being an agent of plaintiff and cross-defendant, and plaintiffs allege that said Joe Simmons, or W. J. Simmons, believed that he was such agent duly authorized to act in the premises,

and relied upon said belief and appearance, and but for said belief and reliance would have been able to protect the said firm of Simmons & Pearce as a firm properly insured under the Workmen's Compensation Law of the state of Texas by promptly applying for, and obtaining, other insurance.

" 'X. That plaintiff and cross-defendant had theretofore recognized a verbal agreement of L. V. Majors, as its agent, with Crosby, McDaniels & Simmons to procure an indorsement to change the names of parties beneficially interested in the policy first above described, and the verbal agreement of such agent that the new firm was protected immediately, and that the making of such agreement was within the apparent scope of a local agent's authority.'

"Appellee filed a second supplemental petition, in which he alleged that the $100 advance premium was retained under a provision in the policy reading as follows:

" 'At the end of the policy period, the actual amount of the remuneration earned by employés during such period shall be exhibited to the corporation, as provided in condition C hereof, and the earned premium adjusted in accordance therewith at the rates and under the conditions herein specified. If the earned premium, thus computed, is greater than the advance premium paid, this employer shall immediately pay the additional amount to the corporation, if less, the corporation shall return to this employer the unearned portion, but, in any event, the corporation shall retain the minimum premium stated in said declarations. (c) The corporation shall be permitted, at all reasonable times during the policy period, to inspect the plants, works, machinery, and appliances covered by this policy, and to examine this employer's books at any time during the policy period, any extensions thereof, and within one year after its final expiration, so far as they relate to the remuneration earned by any employés of this employer while this policy was in force.'

"And further alleged that there had been no adjustment or settlement between plaintiff and the employers mentioned in the policy; that plaintiff did not know what sum, if any, was due such employers on account of the advance premium, or to whom said sum, if any, was due, but that, on June 11, 1925, it had tendered and offered to pay said sum of $100 to Simmons & Pearce, and that they refused to accept it. Appellee alleged that it was tendering said sum in court. It alleged that, with reference to the premiums of $73.63 and $240.07, paid to Geo. M. Easley & Co. by Simmons & Pearce, the said Geo. M. Easley & Co. retained such premiums without knowledge or consent of appellee; that, within 30 days after it acquired knowledge that said premiums had so been paid, the said sums were offered and tendered to Simmons & Pearce, and they declined to accept same. Appellee denied that either L. V. Majors or Geo. M. Easley & Co. had any right or authority to collect any premium on the policy involved in the case from said Simmons & Pearce.

"At the close of the evidence the court instructed a verdict in favor of appellee, assurance corporation, and, on the due return thereof, rendered judgment in its favor."

From the judgment so entered, this appeal proceeds.

The sole question presented is whether or not, as between the parties litigant, there was in law compensation insurance coverage of the firm of Simmons & Pearce for their employés at the time of Moffett's death on May 15, 1924.

As the quoted statement of their pleadings has presaged, appellants, in their contention that there was, depend entirely upon the transactions had between W. J. or Joe Simmons, a member of that firm, and L. V. Majors, appellee's local agent at Corsicana, as his acts were reinforced by authority he actually or apparently had from appellee through its state agents for Texas, Geo. M. Easley & Co., of Dallas.

[1] The appellee objects that appellants, for lack of proper pleading, were not entitled to raise against it the issue of whether or not it was estopped to deny its agent's authority to verbally agree that Simmons & Pearce were so insured, but this protest is overruled. They had originally alleged, in addition to a written one not proven, a verbal contract of coverage through an agent. The appellee replied that the agent had no authority to make such verbal contract, and that Simmons & Pearce knew that fact from the original issuance of the written policy to the other firm of McDaniels & Simmons, and the subsequent indorsement thereof to Crosby, McDaniels & Simmons. In reply to this, appellants averred, by what they termed a supplemental cross-petition, that appellee was estopped to deny such agent's authority to verbally agree that Simmons & Pearce were insured. Moreover, there was neither objection by exception or otherwise to this last-mentioned pleading as not being in due order, nor to any evidence thereunder on that account. Sparkman v. Bank (Tex. Civ. App.) 246 S. W. 726; Glenn v. Dallas Co., etc., District (Tex. Com. App.) 268 S. W. 453, par. 2.

Giving them credit on their claim for an estoppel, the gist of appellants' position may further, perhaps, be best reflected in their own language in written arguments filed in this court, as follows:

"This is not a case of relying on the assurance of a local agent, in the teeth, as appellee contends, of a statute telling us of a limitation on the agent's authority, as well as of a policy telling us of a limitation on the agent's authority. * * *

"The estoppel in this case is the estoppel of the company—not by virtue of authority Majors, the local agent, claimed he had—but the authority George M. Easley & Co., as general agents, justified W. J. Simmons in believing Majors had. And that authority was simply the authority to assure one requesting insurance, by indorsement on the policy, that he was already insured, and that the indorsement would issue in due course. None of the statutes and none of the cases cited by appellee hold that the company itself cannot waive the necessity of written indorsement on the policy. What the company can do itself it is possible for it to do only by an agent or agents; and the cases cited in our brief show that what the company itself can do the general agent can bind it to do. The case of Provident Savings Life Assurance Society of New York v. Oliver, 22 Tex. Civ. App. 8, 53 S. W. 594, quoted from in our original brief, and in which the Supreme Court refused writ of error, we submit, is precisely in point and is sound."

The undisputed facts—in its opinion determinative of the cause—as this court gleans them from the record, may briefly be summarized to this effect:

The only policy ever issued was that referred to in the quoted pleadings as No. W C (U) 215456, to McDaniels & Simmons as employers, dated July 17, 1923, and on November 12, 1923, indorsed by changing the employers' names from McDaniels & Simmons to Crosby, McDaniels & Simmons. This indorsement was made by the appellee through its Texas state agent, George M. Easley & Co., pursuant to the request Joe Simmons made of its local agent, Majors, to have that action taken, substantially as is alleged in appellants' pleadings. Simmons alone acted for his successive firms in the matter, and had no dealings concerning it with any other representative of the appellee than Majors. He testified:

"I am acquainted with L. V. Majors of Corsicana, Tex. I did have some business with L. V. Majors in behalf of the above-named firm. I took out a policy with Majors in July, when I first started in with McDaniels. He attended to my insurance all the way through, and when there were any changes to be made, he took it up with the general office in Dallas, and just went ahead and handled my reports and everything. I changed my policy from McDaniels & Simmons to Crosby, McDaniels & Simmons somewhere about November, 1923, and, when I organized the Crosby, McDaniels & Simmons, he changed that policy, and when we dissolved partnership and started a new company he changed it to Simmons & Pearce, and instructed me that we were fully covered with insurance under the original policy. * * * I requested that the policy be changed to the name of Simmons & Pearce, and Mr. Majors told me, when I requested him to make the change, that it would be made, and I was fully covered with insurance."

Mr. Simmons thus knew, as indeed the written policy he so held upon its face also advised him, that Mr. Majors had no authority to make such a change, but would have to get it done by the company direct, or at least by its state agents in Dallas, and confessedly relied upon the local agent's personal assurance that it would be made. Mr. Majors himself testified that he received this request from Mr. Simmons about April 15, 1924, but through press of business at the time neglected to take the matter up with Easley & Co. at Dallas, to whom alone he applied, until May 8, 1924, when he did so by letter to them, calling their attention to the

outstanding policy No. 215456, and to the fact that they had during the year before issued an indorsement thereto, changing the name of the designated employers from McDaniels & Simmons to Crosby, McDaniels & Simmons, advising them that Simmons & Pearce had bought out the interest of Crosby and McDaniels, that the firm was then known as Simmons & Pearce, and requesting an indorsement covering that change.

Two days later, on May 10th, Easley & Co. replied by letter as follows:

"Replying to your favor of the 8th, we regret very much to advise that it is absolutely against the instructions of the company to indorse compensation policies for changes in ownership. In all such cases it is necessary for a new policy to be written, and for a payroll audit to be made under the old policy before allowance can be made for a return of the deposit premium. As stated above, we regret that we cannot handle the matter as suggested by you, and we await your further advice as to the disposition of your policy."

To this letter of the 10th Majors replied on May 14th, telling the state agents there had been no change in ownership, the only change being that Mr. Pearce had bought out Mr. McDaniels' interest, and that Mr. Simmons still owned the controlling interest in the firm, which was then Simmons & Pearce. He again reminded them that they had on November 12th of the preceding year made the same kind of change without issuing new policy, and reiterated his request that they send it to him. Not hearing from them by May 16th, he again on that date wrote them, urging that they send him the requested indorsement by special delivery. To this last request Easley & Co. replied by letter on May 17th:

"We are in receipt of your favor of the 16th, captioned as above, and as per your request we have applied to the Houston agents for indorsement changing the name of Crosby, McDaniels & Simmons to Simmons & Pearce. As soon as we receive this indorsement, we will forward it to you."

There the negotiations virtually ended. No assignment of interest under the policy to Simmons & Pearce was ever indorsed thereon. Moffett had died an accidental death while in the course of employment for them on May 15th, and Easley & Co., on July 17, 1924, wrote Majors a final letter, recounting what had passed between him and themselves about the matter, saying that shortly after they had written Houston for the requested indorsement on May 17th "it would seem the assured (Crosby, McDaniels & Simmons) had a death case, and the company made an investigation without referring to our files as to whether or not the indorsement had been requested, and it seems they have ascertained that the firm had discontinued business." They added that they had only very recently learned of the death loss;

that the policy would expire on July 17th; and concluded, "Please advise if you desire the policy renewed, and, if so, please give us the correct name of the assured."

It is without contradiction also shown that appellee had, prior to May 8, 1924, given Easley & Co. instructions not to indorse any change of employers' names in its workmen's compensation policies; that after that date they in fact had no authority to make such a change; and that on May 13th it withdrew from them their certificate to represent it as general agents.

[2] Under this evidence, we agree with the trial court that appellants failed to make out a case. Mr. Simmons was conclusively shown to have depended solely upon the impotent assurance of the local agent, Mr. Majors, that the desired change of coverage would be made. The latter, doubtless in the best of faith, relying in making that assurance mainly, if not wholly, upon the fact that on November 12th of the preceding year the general state agents for the appellee had made a like change at his request, which the company had ratified, in turn depended wholly upon them. In the meantime, however, the appellee had inaugurated a change of policy, and, before Mr. Majors had written his letter of May 8th requesting the change of employers' names here involved, had withdrawn from these general agents any such authority, and had instructed them to make no more indorsements of that character. On receiving his letter of request, they very promptly so advised him, and then began efforts to get the desired change from those to whom the authority had been transferred, in which, however, they never succeeded. Neither Mr. Simmons nor Mr. Majors claimed to have had any sort of prior agreement, understanding, or even communication with or from Easley & Co. touching this change; so that, having independently acted upon their own knowledge that the latter had in a single instance during the preceding year made a like one—assuming from that alone that the one desired on May 8, 1924, would also be granted, and having so waited until these general agents themselves had been shorn of any power to recognize such a change of interest—there was clearly no justification for a belief on Simmons' part that Majors had any. He therefore failed to invoke the actual power general agents for the company might in other circumstances possess, and the correctness of appellants' quoted application of the holding in Savings Society v. Oliver, 22 Tex. Civ. App. 8, 53 S. W. 594, might be conceded without affecting the conclusion we have drawn from the facts here; so this case is, in effect, one "of relying on the assurance of a local agent, in the teeth of a statute (R. S. art. 4968), as well as of a policy (provisions I and L, supra) telling us of a limitation on the agent's authority." Since this determination must follow from the un-

disputed evidence, no further citation of authority is deemed necessary.

[3] Neither, we think in the circumstances shown, did the declared-upon receipt and retention of the three several sums of money estop the appellee from showing that the employés of the copartnership of Simmons & Pearce were not protected by insurance with it. The $100 advance premium was paid when the policy was originally issued to McDaniels & Simmons, and was to be retained by the company "until expiration of the policy, and applied to the settlement of the last adjustment period," which expiration had not occurred.

The items of $240 and $73.63 were sent to Easley & Co. for May and April, 1924, monthly pay roll remittances from Crosby, McDaniels & Simmons as the assured, and were received by them July 19th and June 23d, respectively, after their certificate of authority as general agents for appellee had been withdrawn on the preceding May 13th. They merely retained the amounts pending final audit by the company's own auditors of the assured's pay rolls, which the appellee's rules and system required as a prerequisite to acceptance for it. No such audit was ever made, and neither sum was ever remitted by Easley & Co. to the appellee. If, however, Easley & Co. could be said to have acted for appellee in retaining this money, under the other facts stated, that was at most only so while it was investigating the case and pending litigation. During this trial all three of these amounts were tendered by the appellee to appellants, and refused.

There never having been any recognition, by indorsement on the policy or otherwise, of any change in employers, the temporary retention by Easley & Co., after the loss occurred and for the purpose indicated, of such pay roll remittances neither bound the appellee nor estopped it from showing that the employés of Simmons & Pearce had not been protected by insurance with it. Benanti v. Delaware Ins. Co., 86 Conn. 15, 84 A. 109, Ann. Cas. 1913D, 826; Georgia Home Ins. Co. v. Rosenfield, 95 F. 359, 37 C. C. A. 96; Lewis v. Phœnix Mutual Life Ins. Co., 44 Conn. 72, 91; Rice v. Fidelity & Deposit Company of Maryland, 103 F. 427, 43 C. C. A. 270 (8th Circuit).

The judgment has been affirmed.

Affirmed.