**MICHIGAN MUTUAL LIABILITY COMPANY, Complainant,**

v.

**SHUFORD & McKINNON, INC., a corporation, Defendant.**

**Civ. A. No. 4242.**

United States District Court

S. D. Mississippi, S. D.

Aug. 30, 1968.

K. Hayes Callicutt, Jackson, Miss., for complainant.

Richard B. Wilson, Jackson, Miss., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NIXON, District Judge.

This suit was filed by Plaintiff, Michigan Mutual Liability Company, organized and domiciled in the State of Michigan and qualified to engage in the insurance business, including the issuance of insurance policies in the State of Mississippi, against its general agent, Shuford & McKinnon, Inc., a Mississippi corporation domiciled in Jackson, Mississippi.

The defendant had been plaintiff's general agent in the State of Mississippi, writing insurance policies for plaintiff for a number of years preceding the writing of the policy in question, and consequently, had the authority to issue plaintiff's policies, including fire insurance policies covering various risks.

In about 1959 the defendant agency began writing coverage on the egg processing plant of Nearby Eggs, Inc., a Mississippi -corporation principally engaged in the egg farming business, some of these policies having been written for plaintiff and some for other insurance companies, including Home Owners Insurance Company of Chicago, Illinois.

In February, 1964, Nearby Eggs, Inc. moved its egg producing plant from Itta Bena, Mississippi to Kilmichael, Mississippi. Prior to that time and specifically in February, 1964, defendant had written a fire insurance policy, (Plaintiff's Exhibit 1) insuring contents of a certain building located on Nearby Eggs, Inc.'s, plant at Itta Bena. This policy was subsequently endorsed (Plaintiff's Exhibit 2) to cover the contents, other than eggs, located in the egg processing plant building. On February 11, 1965 the defendant, through its officer and fifty per cent stockholder, J. O. Shuford, Jr., rewrote in favor of Nearby Eggs, Inc., the policy in question, plaintiff's policy No. 41–311189 (Plaintiff's Exhibit 3) in the amount of $15,000.00, on the contents, other than eggs, in the egg processing plant building of Nearby Eggs, Inc. at Kilmichael, Mississippi, which coverage, as stated in said policy, is as follows:

"On contents, other than eggs, while contained in the 1–IC Building, occupied as an egg processing plant, located on Vaiden Road, 1½ miles south of Kilmichael, Montgomery County, Mississippi. Electric heat. * * * (ADAMS FARM)"

Prior to writing the last above mentioned policy, J. O. Shuford, Jr. traveled to Kilmichael at the request of Julian Russell, one of the officers and owners of Nearby Eggs, Inc., for the purpose of discussing the amount and value of contents other than the eggs, including machinery, cartons, cases, fillers, spare parts and spare cooling unit parts and other miscellaneous items, including egg grading machines and cooler, and to write the necessary policy of fire insurance on said contents or personalty.

The above described building, namely 1–IC, which is circled in orange color on Plaintiff's Exhibit 4, is a one-story frame structure with a concrete floor, covered with sheet metal and with a V-type conventional roof. It is 90 feet long and 45 feet wide and contains electrical heat, that is, electrical apparatus for refrigeration of the cooling room or area. While standing in this egg processing plant in February, 1965, Shuford asked Russell where the rest of the contents or supplies amounting to $15,000.-00 value were located, because the room in which they were standing did not contain contents near the value of $15,000.-00. According to Shuford's testimony, Russell replied that they were "in the storage room." Shuford testified that by this answer he thought Russell meant that the rest of the contents were in the same building, namely, the egg processing building, since it was customary for such plants to have storage rooms and also to store contents in an attic therein, and since Shuford saw a light shining under a door leading to another area which he thought was a storage area, but which, in fact, was the cooling room or area. In truth and in fact, and as admitted by all parties, Russell, in stating "the storage room" was referring to a utility shed which was an entirely separate building located approximately 150 yards from the egg processing plant. This shed was a three-sided frame building with a slanted roof constructed out of creosote poles placed in the ground and covered with metal on the north, east and west sides, the south side being open except for ten feet on each end. This building was 36 feet wide and 100 feet long, with 80 feet thereof being open on the south side. It was located near the road which passed in and out of the Nearby Eggs, Inc. property and is the building shown on Plaintiff's Exhibit 4, circled in black. It had a dirt floor prior to 1964, when a wooden floor was placed in the utility shed. It was wired for lighting only, and not heat.

This utility shed, in which the bulk of supplies or contents were actually kept by Nearby Eggs, Inc., also had miscellaneous other items stored therein, including creosote poles which had been stored there for approximately three weeks at the time of the fire which gave rise to this controversy. The manager of Nearby Eggs, Inc. farm, James Gordon Powell, used one end of this shed to store various items of personal property.

Powell further testified that Nearby Eggs owned a 250-gallon portable metal (steel) tank on skids and which was located approximately three to five feet from the utility shed when he arrived at the scene of the fire which occurred on July 21, 1965. This tank was kept in this particular area because there was an outside floodlight on the corner of the utility shed and Powell could keep his eye on the tank which contained gasoline and which was usually kept in this immediate vicinity.

Shuford stated that he did not examine the contents which were insured at the time that he insured them in February, 1965, and that it would have taken him only approximately five minutes to have done so and to have determined exactly where they were stored. After the policy in question was written, the safety engineer or inspector of the plaintiff inspected the egg processing plant and reported that building a good fire risk.

On July 21, 1965, a fire, the exact origin of which was not proved by either side in the trial of this case, destroyed the utility shed and its contents. It was established through the testimony of James Gordon Powell, Nearby Eggs' manager, that when he was informed of the fire by a Negro employee of Nearby Eggs, he found a tractor, which he denied was stored under the fifteen foot utility shed at the time, the gasoline storage tank and the utility shed all burning. It is significant that Shuford, himself, testified that at the time that he wrote the policy in question, the tractor was parked under the utility shed. The remains of the tractor and the other remains of the fire are shown in a series of pictures admitted in evidence as Plaintiff's Exhibit 8.

Plaintiff herein refused to pay Nearby Eggs, Inc. for the loss of the contents located in the utility shed which burned, contending that the contents therein were not covered, but that the only contents covered by the policy in question were those located in the building described in said policy as 1–IC. Consequently, Nearby Eggs, Inc. filed suit in the Circuit Court of the First Judicial District, Hinds County, Mississippi, against plaintiff and defendant herein, both as defendants therein, in Cause No. 17,934, which resulted in a judgment by the Court, jury having been waived, in favor of Nearby Eggs, Inc., only against plaintiff herein, and in favor of the defendant herein on Nearby Eggs, Inc.'s claim against it. All of the relevant pleadings and rulings of the Circuit Court are in evidence herein as Defendant's Exhibit 1. The judgment of $15,000.00 together with interest from the date thereof until paid and all costs of said proceeding in favor of Nearby Eggs, Inc. against the plaintiff herein, Michigan Mutual Liability Company, was apparently not appealed from and became final and has been paid by plaintiff herein to Nearby Eggs, Inc. In the proceeding in the Circuit Court of Hinds County request for removal to the Chancery Court of Hinds County was denied prior to the trial. Mississippi law does not contemplate Third Party Pleading, and there was no adjudication of the rights between plaintiff and defendant herein. The Circuit Judge, in his supplemental ruling, stated that he doubted "that any action upon a claim espoused by the insurance company against its agents could have been adjudicated in this court, even if the cause had been tried under equity rules."

Plaintiff herein then brought this suit against the defendant herein, in the amount of $16,680.90, including the $15,000.00 judgment paid to Nearby Eggs, Inc., the amount of $1,500.00 attorneys' fees incurred in defending said suit, the court costs amounting to $22.95, and miscellaneous expenses in the amount of $157.95. The defendant admits in its answer that if it is liable to plaintiff it is liable in the amount of $16,680.90.

A day or two after the fire and subsequent to assigning the investigation of the fire claim to an adjuster, Mr. Shuford traveled to Memphis, Tennessee to discuss this loss with W. L. Strubel, branch manager of the Memphis office

of the plaintiff insurance company. It is without dispute that Shuford admitted to Strubel and Martin Fogarty, resident vice-president for the south-central region of plaintiff's company headquarters in St. Louis, and who was in Memphis at the time, that he "had goofed" or made a mistake or error in failing to ascertain that the contents which were intended to be covered were in the main located in the utility shed, rather than in the egg processing plant designated in the policy in question. He asked permission to endorse the policy retroactive to the date of the fire in order to cover the contents which burned, so that plaintiff could pay the loss, but plaintiff's officials refused to permit this, whereupon Shuford stated that he would report his mistake to his errors and omissions insurance carrier and let them worry about the loss.

Shuford admitted that in order for the contents of this utility shed to have been covered, the policy would have to have included a description of the shed in addition to the egg processing plant which was described therein; that never in his twenty-two years as an insurance agent, having written approximately 15,000 fire insurance policies, had he ever described a 3-sided building of the type here in question as a warehouse; that he does not think a policy would ever have been written on a separate egg plant storage warehouse; and, that he was "shocked" when he found that the larger amount of the contents intended to be covered by the policy in question were stored or located in the shed that burned, rather than the egg processing plant.

Although there was conflicting testimony with reference to whether a larger or additional rate would have been charged in order to cover the contents in this utility shed which burned, as well as the egg processing plant, the court finds that an additional premium would have been required if said additional coverage was contained in the policy. However, and in any event, the Court finds that the plaintiff would not have

insured the contents of this utility shed; that it was deprived of an opportunity for its engineer or safety inspector to inspect the shed which was not mentioned in the policy; and, if they had been insured by Shuford, the plaintiff insurance company would have immediately cancelled coverage thereon when the policy arrived in its home office for approval, based upon the undisputed testimony of W. L. Struble, its Memphis branch manager, and Martin Fogarty, its resident vice-president for the south-central region with headquarters in St. Louis.

In this connection, it should be noted that a fire insurance policy on the shed itself, which burned, was written by defendant with Home Owners Insurance Company on February 17, 1965, being Plaintiff's Exhibit 5, and described said building as a "frame, approved roof, Utility Shed". It is therefore found that this would have been the description of the building put in the policy in question by the defendant and brought to the attention of plaintiff, which did not and would not insure a utility shed and contents thereof or which coverage would have been immediately cancelled by plaintiff if it had been written by the defendant with plaintiff.

The Court further finds that the pleas of res judicata and collateral estoppel raised by the defendant in its pleadings are without merit, because, in the above mentioned Circuit Court proceeding the only question at issue was the liability of the Plaintiff and Defendant herein, both as Defendant therein, to Nearby Eggs, Inc., Plaintiff therein, and thus, there was no identity of things sued for, identity of cause of action, nor identity of quality or character in the person against whom the claim was made, which are three of the four essential conditions necessary to sustain a plea of res judicata. The Court takes judicial notice that there is no third party practice allowed in the state courts of the State of Mississippi, and that not only was there no determination by the Court with reference to the liability of

294

the Defendant herein to Plaintiff herein, but furthermore, that there could not be any such determination by the Mississippi court under Mississippi law, as recognized by the Circuit Judge of the First Judicial District of Hinds County, Mississippi, in the last paragraph of his Supplemental Ruling, which is part of Defendant's Exhibit 1.

## CONCLUSIONS OF LAW

■  The Court has jurisdiction of the parties and of the subject matter. The defendant, general agent for plaintiff, although acting in good faith, violated its duty to exercise due care, skill and diligence in writing a fire insurance policy covering contents, the greater part of which were not located in the building described in the policy in question, Plaintiff's Exhibit 3, namely, the egg processing plant, but which in the main were contained in a utility shed approximately 150 yards away, which fact defendant could have ascertained through the exercise of reasonable care, which it failed to do. The defendant negligently and incorrectly informed plaintiff through the writing of the policy in question, that all of the contents insured were contained in the egg processing plant designated therein as Building 1–IC, which was an incorrect and erroneous statement or representation relied upon by the plaintiff in writing and approving this policy. Plaintiff would not have authorized the writing of this policy to cover the contents located in this 3-sided utility shed, because it did not insure sheds or the contents thereof. Furthermore, plaintiff was deprived of the ability to have the shed and its contents inspected by its safety engineer or representative who inspected the egg processing plant, even if said policy had been written on the shed, and plaintiff would have immediately cancelled coverage on the contents of this particular shed, if it had been written.

■  The plea of res judicata and/or collateral estoppel contained in the answer of the defendant herein and previously overruled by this Court is without merit, because of the above findings of fact.

■  The Plaintiff has been damaged in the amount of $16,680.90 as a direct and proximate result of the negligence of the defendant in its failure to use reasonable care and diligence in the transaction complained of herein. Thus, Plaintiff is entitled to a judgment here against the Defendant in the full sum and amount of $16,680.90 plus costs, to be taxed by the Clerk of this Court. A judgment, accordingly, may be presented for entry to the Court at Biloxi on the 9th day of September, 1968.