HOUSTON GENERAL INSURANCE COMPANY and Gene Smyers d/b/a Gene Smyers Insurance, Appellants,

v.

LANE WOOD INDUSTRIES, INC. and d/b/a Ranada Mobile Homes, Inc., Appellees.

No. 17980.

Court of Civil Appeals of Texas, Fort Worth.

Sept. 7, 1978.

Rehearing Denied Oct. 12, 1978.

McBryde, Bogle & Green and John F. Green, Jr., Fort Worth, for Houston Gen. Ins. Co.

Cantey, Hanger, Gooch, Munn & Collins and Tolbert L. Greenwood, Fort Worth, for Gene Smyers d/b/a Gene Smyers Insurance.

Kilgore & Kilgore and Eugene R. Lyerly, Dallas, Shannon, Gracey, Ratliff & Miller and Kleber C. Miller and David E. Keltner, Fort Worth, for appellees.

OPINION

HUGHES, Justice.

This case involves an action against an insurer on a liability insurance policy and a negligence action against the insurer's local recording agent. The issues presented on appeal are whether the judgment against the insurer may be supported on the ground of estoppel, contract or reformation and whether the agent was negligent in failing to maintain or secure liability coverage for plaintiff. The trial court rendered judgment for plaintiff.

We affirm.

Houston General Insurance Company appealed from a judgment rendered against it on a general liability insurance policy for $78,191.06 plus interest of 9% from date of judgment. The policy had been issued on June 1, 1968, by its predecessor, General Insurance Corporation, to Ranada Mobile Homes, Inc. which was then engaged in the manufacture and sale of mobile homes. The $78,191.06 amount reflects the jury's verdict of $61,505.00 plus interest at the legal rate from June 1, 1973. The judgment further provides that in the event it is not satisfied by Houston General for any reason, Houston General's local recording agent Gene Smyers, doing business as Gene Smyers Insurance Company, is to be alternatively liable in negligence for $61,505.00 plus interest of 9% from date of judgment. Smyers has also appealed.

Lane Wood Industries, Inc. brought suit against Houston General and Smyers after it had purchased the manufacturing operation and other assets of Ranada, including its prepaid insurance. The general liability policy had been issued to and showed Ranada as the named insured. Four days before the policy's expiration date of June 1, 1969, three persons were injured in an explosion and fire in a mobile home manufactured by Lane Wood after its purchase of Ranada's assets. Lane Wood seeks to recover the amount it spent defending and settling the negligence and products liability suit

brought in Bell County, Texas, by the injured persons. Houston General provided a defense for Ranada in that action but refused to defend Lane Wood because it had not known of the asset sale and had not endorsed its consent to the assignment on the policy. Such endorsement of consent was required by the terms of the policy:

9. Assignment: Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon.

. . .

Judgment was entered in Lane Wood's favor on the jury's verdict. Defendants' motions for judgment on the verdict and, alternatively, for judgment non obstante veredicto were overruled.

The purchase and assignment of Ranada's assets occurred on December 20, 1968, well before the expiration date of the policy. By the terms of the sale Ranada assigned to Lane Wood all of its assets, including the right to use the name "Ranada Mobile Homes, Inc." No Ranada stock was sold. Although the selling corporation existed for at least a year after the sale, it did not engage in any manufacturing. Lane Wood operated the manufacturing plant under Ranada's name and used Ranada's checks, bank accounts and stationery for making premium payments and for correspondence. George Crowder, one of three Ranada stockholders and the president and manager of the operation before the sale, continued as president after the sale. It is undisputed that Lane Wood held the operation out to the public as Ranada Mobile Homes, Inc. in all respects. There was testimony that an outsider would not have detected any change in the operation.

Smyers had handled nearly all of Ranada's insurance policies for some three or four years. On a routine visit to the manufacturing operation he was informed by Crowder that "we've sold out" and that Dick Finlay would contact him. They did not discuss details of the sale, although Smyers testified that until January 1971 he thought the sale was a stock sale. Neither Smyers nor Houston General ever inquired about the nature of the sale, although there is testimony by Crowder and Finlay that they would have disclosed the nature of the sale if asked. Finlay, the Lane Wood vice president in charge of insurance matters, did meet with Smyers for the purpose of confirming that he wanted Smyers to continue handling the business for Ranada. He left the business with Smyers and authorized him to renew coverage upon expiration.

No one ever requested that Lane Wood be substituted as the named insured and the change was never made.

After the sale and before the policy expired, Houston General paid other claims for property damage under this policy and some workmen's compensation claims under a policy issued to Ranada. Although Finlay testified he had no correspondence with Houston General from January to May 1969, Houston General's engineers made a routine inspection of the plant after the sale. Houston General's business records show it learned of the sale of the company to Lane Wood on February 13, 1969. After learning of the sale Smyers and his employees continued to service the policies, having numerous conversations and meetings with Lane Wood—some at Lane Wood's offices. Houston General has not tendered to Lane Wood any premiums paid because it has paid out more after the sale in claims under the policy than had been collected in premiums.

There is testimony Houston General would not have been willing to extend "split-risk" coverage to Lane Wood for only that operation. In fact, before June 1, 1969, Houston General refused to renew coverage even to Ranada. Smyers renewed the coverage for Ranada with another company before he learned of the nature of the sale.

SUIT AGAINST HOUSTON GENERAL
ON THE INSURANCE POLICY

Lane Wood seeks to recover against Houston General on the policy only. It has not asserted any negligence theory against Houston General based on the allegations of negligence of Smyers. Lane Wood failed to

obtain a jury finding that Houston General had waived its right to insist that the policy did not cover the loss or that the policy did not provide coverage to Lane Wood because of Lane Wood's unilateral mistake. Under the pleadings Lane Wood may prevail only on a theory of contract or reformation because of mutual mistake or estoppel.

Houston General first complains of the overruling of its motion for judgment on the verdict. It asserts the verdict does not support a judgment against it on either of these theories.

### A. *Contract or Reformation*

■ Insurance contracts may be reformed to speak the true agreement between the parties. *Fireman's Fund Indem. Co. v. Boyle General Tire Co.*, 392 S.W.2d 352 (Tex.1965).

> The equitable reformation of a written contract is based upon the premise that a contract was actually made, but the written memorandum thereof, because of a mutual mistake, does not truly reflect the actual agreement of the parties. "Reformation is a proper remedy when the parties have reached a definite and explicit agreement, understood in the same sense by both, but, by their mutual or common mistake, the written contract fails to express this agreement." *Champlin Oil & Refining Company v. Chastain*, 403 S.W.2d 376, 382 (Tex.1965).

■ The jury found there was a contract, express or implied, to provide coverage for the manufacturing operation. But it also found that Houston General and Smyers did not know the sale to Lane Wood was an asset sale before the policy expired. We hold that the jury findings do not support a judgment for Lane Wood on the ground of contract or reformation because there is no finding of a prior agreement that Lane Wood be the named insured. "A provision not contained in the preceding oral agreement cannot be inserted in the reformed written agreement under the guise of reformation." *Continental Oil Company v. Doornbos*, 402 S.W.2d 879, 883 (Tex.1966).

■ The jury's findings that neither defendant knew of the nature of the sale provide an alternate basis for our holding. These findings are controlling over the findings that a contract existed between Lane Wood and the defendants to provide coverage *for* the operation, that the failure to provide coverage *to* Lane Wood was because of a mutual mistake, and that all parties intended that there be coverage *for* the operation.

We reject Lane Wood's contention that the findings that the defendants were ignorant of the nature of the sale are immaterial and evidentiary. We hold that these findings defeat Lane Wood's cause of action based on contract or reformation.

### B. *Estoppel*

Houston General would avoid being estopped to deny coverage based on defendants' ignorance that the sale was of assets. It argues that the party sought to be estopped must have had full knowledge of the material facts at the time of his representation, act or conduct claimed to constitute the basis of the estoppel.

Lane Wood alleged that Houston knew there had been "a sale," and the evidence to that effect is undisputed. We hold that the defendants' ignorance that the sale was of assets does not defeat Lane Wood's cause of action based upon estoppel.

> Where a person, with actual *or constructive knowledge* of the facts, induces another by his words or conduct to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice. *Champlin Oil & Refining Company v. Chastain*, 403 S.W.2d 376, 385–86 (Tex. 1965) (emphasis added).

■ No issue on constructive knowledge was submitted or requested. A finding will be deemed found by the trial court in support of the judgment when supported by the evidence. Tex.R.Civ.P. 279; *Fidelity & Cas. Co. of New York v. Jefferies*, 545

S.W.2d 881 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.). We hold there is evidence to support an implied finding on the issue of constructive knowledge. Houston General and its local recording agent had notice of facts sufficient to put it on inquiry as to nature of the sale. Accordingly, it is charged with constructive knowledge of the sale of the assets. The case of *Johnson v. Prudential Insurance Co.*, 506 S.W.2d 238, rev'd on other grounds, 519 S.W.2d 111 (Tex.1975), is not controlling because the plaintiff in that case asserted that the defendant was on notice as a matter of law.

Other cases cited by Houston General on the estoppel issue do not compel a different holding: *Hallmark v. United Fidelity Life Insurance Co.*, 155 Tex. 291, 286 S.W.2d 133, 136 (1956) (also permits estoppel on the basis of constructive knowledge); *Zurich Insurance Co. v. Bass*, 443 S.W.2d 371 (Tex. Civ.App.—Dallas 1969, no writ); *Baker v. Highway Ins. Underwriters*, 209 S.W.2d 979 (Tex.Civ.App.—El Paso 1947, writ ref'd n. r. e.); *Williams v. Texas Employers Ins. Ass'n*, 135 S.W.2d 262 (Tex.Civ.App.—Waco 1940, writ ref'd) (no knowledge which might put insurer on inquiry); *Texas Employers Ins. Ass'n v. Bottoms*, 200 S.W.2d 418 (Tex.Civ.App.—Fort Worth 1947, no writ) (clear case of actual knowledge so that no issue of constructive knowledge was raised); *Dallas County Hosp. Dist. v. Pioneer Casualty Co.*, 402 S.W.2d 287 (Tex.Civ. App.—Fort Worth 1966, writ ref'd n. r. e.) (no estoppel issue); *Traders and General Insurance Company v. Lange*, 354 S.W.2d 178 (Tex.Civ.App.—Texarkana 1962, writ ref'd n. r. e.) (special policy provision); *Hunt v. W. O. W. Life Ins. Soc.*, 153 S.W.2d 857 (Tex.Civ.App.—Fort Worth 1941, writ ref'd) (false statements on insurance application); *Traders' & General Ins. Co. v. Emmert*, 76 S.W.2d 208 (Tex.Civ.App.—Waco 1934, writ ref'd) (no allegations or proof of estoppel); *Federal Bldg. & Sales Co. v. Commercial Std. Ins. Co.*, 381 S.W.2d 940 (Tex.Civ.App.—Waco 1964, writ ref'd n. r. e.) (no estoppel because conduct occurred after the loss and when insurer still had no knowledge of facts); *Moffett v. Employers' Liability Assur. Corp.*, 286 S.W. 508 (Tex.

Civ.App.—Galveston 1926, no writ) (lack of agent's authority to bind insurer); *Maryland Casualty Co. v. Palestine Fashions, Inc.*, 402 S.W.2d 883 (Tex.1966) (named insured failed to furnish names of new owners after agent requested them).

Houston General further argues there is no finding that it represented that coverage was provided to Lane Wood for the operation. Such a finding may be implied under Rule 279 in support of the judgment if there is evidence to support it. Having already held that Houston General is charged with constructive knowledge of the asset sale, we further hold that there is evidence to support an implied finding that Houston General by its words, acts, deeds and silence represented that it provided insurance coverage to Lane Wood.

We overrule Point of Error No. One and hold that the jury's findings support a judgment against Houston General on the ground of estoppel.

### C. *Evidence to Support Jury Findings*

■ In Points Nos. Two and Three Houston General complains of the overruling of its motion to disregard certain jury findings. It asserts there is no evidence to support the findings that it or its agent, by any combination of words, acts, deeds and silence, represented to Lane Wood that Houston General provided insurance coverage for the manufacturing operation.

Houston General argues it never *told* Lane Wood it was providing coverage *to Lane Wood* for the manufacturing operation and that innocent silence will not work an estoppel. But under the special issues submitted, a representation may result from any combination of words, acts, deeds and silence. It was not necessary that there be evidence of express statements to Lane Wood that coverage was provided to Lane Wood. After learning of a sale, Houston General paid claims to Ranada, made routine inspections and continued to accept premiums paid on Ranada checks. We have held that Houston General had a duty to inquire about the sale: its silence is not innocent.

Houston General cites *Hidalgo County v. Pate,* 443 S.W.2d 80 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n. r. e.). But *Hidalgo* presents no issue of constructive knowledge and is not controlling. Nor is *American Insurance Co. v. First Savings & Loan Ass'n,* 434 S.W.2d 170 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n. r. e.). In that case this court emphasized that the mortgagee, as one of the named insureds, was under no duty to act when it learned that written notice of cancellation had been sent to the mortgagor-owner but not to it as also required by the policy. The facts in that case do not reveal any relationship between the insurer and the mortgagee-insured which might be construed as a representation by the mortgagee to the insurer that the mortgagee had acquiesced in the termination of the policy as to its interest. The mortgagee was not estopped from asserting that policy had not been terminated as to it.

We hold there is evidence to support the findings that the defendants represented to Lane Wood that coverage was provided for the operation. Points Nos. Two and Three are overruled.

Point No. Four complains there is no evidence that Lane Wood believed and relied upon representations by it and Smyers that coverage was provided for the operation.

Finlay, who was in charge of Lane Wood's insurance matters, testified he believed Lane Wood was insured. Lane Wood continued making premium payments—though on Ranada checks—and Houston General accepted them until the end of the policy term.

Houston General also argues that Lane Wood had the means but failed to acquire knowledge of the need to obtain an endorsement on the policy and therefore may not rely on the doctrine of equitable estoppel.

■■■ We reject this contention. The doctrine of estoppel is intended to promote justice and the reliance of the party asserting it must have been in good faith. It is true there is no estoppel where the knowledge of the parties is equal. *Richey v.*

*Miller,* 142 Tex. 274, 177 S.W.2d 255 (1944). It is also true that "[a] party claiming an estoppel must have used due diligence to ascertain the truth of the matters upon which he relies in acting to his detriment." *Barfield v. Howard M. Smith Company of Amarillo,* 426 S.W.2d 834, 838 (Tex.1968). But the jury found that Lane Wood relied on the representations of the defendants and there is evidence to support the finding of reliance. No issue was submitted or requested on the question of due diligence or the reasonableness of Lane Wood's reliance. This is an issue of fact, and in this instance we must presume a finding by the trial court in support of the judgment. Tex.R.Civ.P. 279. We overrule Point No. Four.

■■■ The Fifth Point of Error complains there is no evidence Lane Wood acted to its detriment upon representations of the defendants that coverage was provided. Houston General argues there is no evidence whether or not Lane Wood attempted to obtain coverage from another company.

Finlay testified that the Houseman agency, which wrote insurance for other Lane Wood divisions, did not write any insurance for Lane Wood on the operation from October 1968 to June 1969. There is also evidence that Lane Wood decided to leave the coverage "where it was" and continued to pay the premiums. We overrule Point No. Five.

■■■ Houston General's Sixth and Seventh Points complain there is no evidence that Lane Wood and the defendants intended that Houston General would provide coverage for the operation.

Houston General does not seriously dispute the evidence to support the findings of an intention to provide coverage for the operation. It does dispute the interpretation Lane Wood would have us give the term "manufacturing operation" so as to include an intention to provide coverage *to* Lane Wood as named insured for the operation.

The court's charge contained the following definitions:

"MANUFACTURING OPERATION" means the mobile home operation in Alvarado, Texas, known as Ranada Mobile Homes owned by the Plaintiff, Lane Wood Industries, Inc.

"INSURANCE COVERAGE" means the same coverage provided by the terms of Houston General Policy number GLA 31 51 58.

We do not construe. the findings complained of to include an intention to provide coverage *to* Lane Wood as named insured. We overrule these points, however, and hold there is evidence to support the findings, when construed to mean an intention to provide coverage to the operation with Ranada as the named insured.

In Point No. Eight Houston General contends there is no evidence that there was a contract, express or implied, between Lane Wood and the defendants to provide insurance coverage for the manufacturing operation. Under this point the parties renew their debate about the meaning of "manufacturing operation."

We have already held that the finding that the defendants did not know of the sale of assets defeats Lane Wood's cause of action based upon a theory of contract or reformation. However, even if we were to accept Lane Wood's assertion that the definition means coverage *to* Lane Wood for the operation owned by Lane Wood, we find no evidence to support the finding of such an express or implied contract.

"A contract implied in fact rests upon consent. It is . . . an agreement between the parties. It does not arise out of an implied legal duty or obligation, but out of facts from which consent may be inferred." (*Stone Company, Inc. v. Carminati*, 317 S.W.2d 78, 80 (Tex.Civ.App.—Fort Worth 1958, no writ). A contract or agreement may not be implied contrary to the intentions or understanding of the parties. *Lewis v. Hill*, 409 S.W.2d 946 (Tex.Civ.App. —Amarillo 1966, no writ).

Houston General's final point contends there is no evidence that the insurance policy failed to provide coverage to Lane Wood's manufacturing operation because of a mutual mistake.

To constitute a mutual mistake which will support a reformation the writing must fail to reflect the preceding oral agreement of the parties due to a mutual mistake. *Champlin Oil, supra.* The record reflects there was no preceding oral agreement to provide coverage *to* Lane Wood.

We overrule Points Nos. Eight and Nine. Although we agree with Houston General's contention that there is no evidence of a contract or mutual mistake, we find no error in the judgment against Houston General. We hold that Houston General is estopped from asserting that the insurance policy does not provide coverage to Lane Wood for the manufacturing operation. The judgment against it is affirmed.

## NEGLIGENCE ACTION AGAINST AGENT

Smyers concedes that an insurance agent who undertakes, but fails, to obtain coverage for his client and does not notify the client of his failure is liable for any resulting loss. *Burroughs v. Bunch,* 210 S.W.2d 211 (Tex.Civ.App.—El Paso 1948, writ ref'd). But Smyers argues he had no duty to Lane Wood and, alternatively, that there was no breach of any such duty.

Smyers groups together Points of Error Nos. One through Seven concerning the trial court's alleged error in overruling his motion for judgment non obstante veredicto. He asserts he did not know that Lane Wood was the owner of the manufacturing operation, had not undertaken to obtain coverage for Lane Wood, and therefore owed no duty to Lane Wood until it notified Smyers it was the new owner. Smyers further complains that there is no evidence he was negligent in failing to issue a new policy to Lane Wood, to investigate the sale, to warn or advise Lane Wood, and to endorse the policy to reflect the change of ownership.

### A. *Existence of Duty*

Smyers argues that Lane Wood did not rely on him as its insurance agent dur-

ing the policy period and had no course of dealing with him which would entitle it to rely on him. Smyers contends that in order to impose a duty upon an agent, the agent must ordinarily have provided insurance protection for the client without consulting the client.

The authorities cited by Smyers are not in point: *McCall v. Marshall,* 398 S.W.2d 106 (Tex.1965) (agent had no duty, without request, to extend coverage to an additional location of which he had knowledge, in the absence of prior dealings in which he had acted before consulting the client); *Langley v. Pacific Indemnity Co.,* 135 Ga.App. 29, 217 S.E.2d 369 (1975) (agent not liable in tort where no agency relationship exists between insured and agent acting solely as representative of insurance company).

Smyers contends that the client must make his instructions clear and that other jurisdictions require the new owner to make a new application. Here Smyers cites *Agee v. Travelers Indemnity Company,* 396 F.2d 57 (10th Cir. 1968) (agent had no notice that divorce he knew to be pending had actually taken place); *Moller v. Niagara Fire Ins. Co.,* 54 Wash. 439, 103 P. 449 (1909); and *Hill v. Grandey,* 132 Vt. 460, 321 A.2d 28 (1974) (agent was told only to obtain coverage provided to previous owner and had no reason to know of off-premises barbecue business which had never been included under coverage before). These cases do not raise the issue of notice of actual facts.

Even if the agent has actual knowledge, Smyers contends, he has no duty to act without a specific request from the client. In *Smith v. Orion Insurance Company,* 298 F.2d 528 (10th Cir. 1961) on which he relies, the agent was told of a contemplated change of pilots. The court held that this statement to the agent, made before any change had occurred, was not the equivalent of an application to make a change of the named pilot. Because the agent in *Smith* had knowledge of a contemplated change only, the case does not support Smyers' contention.

The jury found that Smyers had no actual knowledge of the nature of the sale.

Smyers seeks to avoid being charged with a duty to investigate the sale by asserting that Lane Wood was itself charged with notice of the terms of the policy because Finlay had possession of the policy and then had the Houseman agency review it. But Smyers failed to meet his burden of proof on the issue of contributory negligence on the part of Lane Wood. The jury failed to find that Lane Wood was negligent in not notifying Smyers. In effect, the jury refused to charge Lane Wood with notice.

We hold that Smyers had a duty to investigate the sale and is therefore charged with notice that the sale was an asset sale. It is undisputed that Smyers was informed by Crowder that Ranada had "sold out." And Smyers admitted that he wondered whether the coverage was still in force. "[W]hatever is sufficient to put a person on inquiry is sufficient to affect him with notice of such facts as he might be presumed to learn upon reasonable inquiry." *Coleman Mut. Aid Ass'n v. Clark,* 63 S.W.2d 270, 272 (Tex.Civ.App.—Austin 1933, no writ); *Capital Glenn Mining Co. v. Industrial Accident Comm'n,* 124 Cal.App. 79, 12 P.2d 122 (1932); *Jonas v. Bank of Zodiak,* 162 F.Supp. 751, 17 Alaska 755 (D.C.Alaska 1958); *Michigan Mutual Liability Company v. Shuford & McKinnon, Inc.,* 292 F.Supp. 290 (S.D.Miss.1968).

Smyers relies on *Tollefson v. American Family Insurance Co.,* 302 Minn. 1, 226 N.W.2d 280 (1974). But that case held only that an agent had no *ongoing* duty to investigate whether the client's daughter had ceased to be a student and thus a member of the household for purposes of an automobile liability policy.

Smyers further argues he had no duty to Lane Wood because it did not rely on him as its agent. Smyers has not attacked the jury's finding that Lane Wood relied upon Smyers' representation "by any combination of his words, acts, deeds and silence . . . that Houston General provided insurance coverage for the manufacturing operation." Nor does he dispute the testimony of Finlay that Lane Wood relied on him.

The essence of Smyers' argument is that Lane Wood did not *reasonably* rely on him as is required by *Colonial Sav. Ass'n v. Taylor,* 544 S.W.2d 116 (Tex.1976). Smyers' argument ignores the fact that the jury failed to find that Lane Wood was negligent in failing to notify Smyers of the asset sale. We think this is the equivalent of a finding of reasonableness on Lane Wood's part. Even if it were not, we would be compelled to deem that the trial court found the reliance was reasonable. Tex.R. Civ.P. 279.

We hold that under the circumstances Smyers had a duty to provide coverage to Lane Wood for the manufacturing operation. Points One through Three are overruled.

### B. *Breach of Agent's Duty*

Smyers also argues there is no evidence of his breach of the alleged duty to Lane Wood. Smyers contends there must be expert testimony to establish the professional standard of care for an insurance agent. Houseman testified he did not know what the normal and customary practice for an insurance agent was upon learning of a "sale." He did state that the correctness of the named insured was essential and that the normal and customary practice upon learning of a change of ownership would be to attempt to retain the business. Smyers testified he knew the importance of "having the named insured properly listed," that he had told his employee, Mrs. Onstott, he had "doubts about the coverage" and that he was waiting to hear whether to continue it in force.

Smyers urges that the rule requiring expert testimony to establish the standard of care in medical malpractice cases should be applied to insurance agents. Lane Wood contends there is no Texas case which treats the insurance field as a learned profession requiring expert testimony in negligence actions.

■ We do not think that expert testimony was required as to the normal and customary practice when an agent finds out there has been a "sale" by the corporation insured under a liability policy. This is a matter within the realm of ordinary skill and diligence. Alternatively, we hold that Houseman's testimony is sufficient, if necessary, to establish the standard of care. Houseman testified the agent would customarily talk with the new owner and inquire as to the named insured, or the party at risk. We hold there is evidence of a breach of duty by Smyers to Lane Wood.

We overrule Points Four through Seven and hold that Smyers was on inquiry as to the nature of the sale and owed a duty to Lane Wood. We further hold there is evidence Smyers was negligent in failing to investigate the sale, to warn or advise Lane Wood, and to endorse the policy to reflect the change in ownership.

In Points Nos. Eight through Twelve Smyers complains the trial court erred in overruling his motion for new trial because certain special issues contained a prejudicial comment on the evidence and because the evidence was "insufficient" to support the findings that Smyers was negligent in failing to issue a new policy, investigate the type of sale, warn Lane Wood of the need to obtain a new policy or obtain an endorsement, or to endorse the old one to reflect the change in ownership.

■ The alleged prejudicial comment complained of was included in the following negligence issues:

8A. Do you find . . . that . . . Smyers . . . failed to investigate the type of sale involved, *so as to properly advise . . . Lane Wood . . . and handle the necessary changes in the insurance contract?* (Emphasis added.)

8B was not to be answered unless the jury had answered 8A affirmatively:

Do you find . . . that the failure of . . . Smyers . . . to investigate the type of sale involved, *so as to properly advise . . . Lane Wood . . . and handle the necessary changes in the insurance contract* was negligence? (Emphasis added.)

8C was likewise not to be answered unless 8B was answered affirmatively:

Do you find . . . that the failure of . . . Smyers . . . to investigate the type of sale involved, *so as to properly advise* . . . *Lane Wood* . . . *and handle the necessary changes in the insurance contract* was a proximate cause of . . . Lane Wood . . . suffering the loss? (Emphasis added.)

We think this conditional form of submission eliminates any possibility of prejudice from the use of the term "properly" which Smyers so vigorously objects to on the ground that by informing the jury that Smyers had not properly advised Lane Wood and that Lane Wood would have heeded its advice it therefore improperly assumed an unproven material fact and tainted all the other negligence findings as well.

We reject this contention and overrule Point No. Eight. "In deciding whether a particular part constitutes a comment on the evidence, the charge is considered as a whole. The judge . . . may assume the truth of a disputed fact in a special issue so conditionally submitted that it will not be answered until the jury, in answer to a preliminary issue, has found the truth of the assumed fact proposition." R. McDonald, 3 Texas Civil Practice § 12.03.2 (Rev.1970); *Highland Park State Bank v. Continental Nat. Bank,* 300 S.W.2d 304 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n. r. e.).

We also overrule Points Nine through Twelve. We hold that the evidence was sufficient to support the jury's findings of negligence in failing to investigate the type of sale, issue a new policy or endorse the old one or warn Lane Wood of the need to obtain a new policy or secure an endorsement.

Judgment is affirmed.