GUY MANSELL ET AL V. TEXAS & PACIFIC RY. CO. ET AL.

No. 7468. Decided March 20, 1940.
Rehearing overruled May 1, 1940.
(137 S. W., 2d Series, 997.)

*W. F. Young, Alexander & Bird* and *Frank J. Knapp,* all of Fort Worth, for appellants.

A contract of employment setting out the terms of the employment and stating the procedure that must be followed before employees can be discharged and giving the employee the right to an investigation and trial and the right of appeal, is an obligation the terms of which are binding upon and must be followed by the employer even though the employee does not bind himself to work for any definite period of time. Galveston, H. & S. A. Ry. Co. v. Eubanks, 42 S. W. (2d) 475; Harrison v. Pullman Co., 68 Fed. (2d) 826; San Antonio & A. P. Ry. Co. v. Collins, 61 S. W. (2d) 84.

*Adair Dyer,* of Dallas, *Allen & Gambill, Cantey, Hanger & McMahon, Wren, Pearson & Jeffrey, Thompson & Barwise* and *Fred L. Wallace,* all of Fort Worth, and *Sewell, Taylor, Morris & Garwood,* all of Houston, for appellees.

It was not error for the trial court to sustain the general demurrer to plaintiffs' petition for the reason that it failed to allege a compliance with the provisions of the agreement sued upon, as supplemented by statutory law, which would entitle them to assert a cause of action. Mallenhan v. Texas & Pac. Ry. Co. 87 S. W. (2d) 771; Cousins v. Pullman Co., 72 S. W. (2d) 356; Robertson v. Panhandle & S. F. Ry. Co. 77 S. W. (2d) 1078.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

The trial court sustained the general demurrer to the petition

of appellants. The Court of Civil Appeals, after preparing a tentative opinion in which the conclusion was reached that the petition was good as against a general demurrer, has certified certain questions to this court. Appellants, in their petition, alleged that twelve railroad companies entering Fort Worth created for their mutual benefit, profit and advantage, an agency known as the "Joint Car Association of Fort Worth Railways"; that the purpose of the creation of the association was to set up an agency to employ men to make uniform inspection of railroad cars passing in interchange between the railways; that the association was organized by the railway companies with a president, vice-president, chief joint car inspector, secretary, executive committee and efficiency committee; that the chief joint car inspector had the authority to employ and discharge laborers and to supervise them; and that it was the duty of the executive committee to hear all appeals from decisions of the chief joint car inspector. Appellants alleged that they were all employees of the said railroad companies, being employed as joint car inspectors by the chief joint car inspector and engaged in the work which the joint car association was created to do; and that the duties of plaintiffs were to inspect and repair interchange freight and passenger cars entering into the City of Fort Worth over the lines of the railroad companies.

They alleged that for many years prior to the date of their discharge they had been operating under a working agreement or employment contract, a copy of which was attached to their petition; that one of the provisions of the working agreement was that no employee should be discharged or suspended without a fair investigation; that he should be furnished with a copy of the charges against him twenty-four hours in advance and be granted a trial, and, within ten days, be given a decision by the chief joint car inspector, and that he should have the right to appeal his case to the highest ranking officer of the association. They alleged that on October 19, 1933, without cause or previous notice, they were discharged by defendant railways; that no investigation was given any of them, nor were they furnished with any charges against them; that they requested the railways and their agent, the chief joint car inspector, to comply with their working agreement as to filing charges and granting and investigation and appeal, but defendants wholly failed and refused to comply with that agreement.

It was further alleged that the railway companies, as an excuse for their wrongful act of discharging the plaintiffs,

fraudulently pretended that they had revoked their agreement creating the joint car association and, by so doing, had prohibited the officers of said association from thereafter representing them and had refused to allow such officers to represent them, under the pretext that, by the pretended revocation of the agency agreement, the offices had been abolished and the holders thereof were no longer employees of the defendants. It was alleged that all of this was a fraudulent pretext to create an apparent excuse for discharging the plaintiffs and to escape legal liability for a breach of the contract. It was further alleged that, after discharging plaintiffs, the railroad companies employed others to do the same work formerly performed by plaintiffs; that such work is still being performed by men employed to take the places of plaintiffs. That after their discharge plaintiffs petitioned defendants to comply with the working agreement, and requested that an investigation and trial be given them; but were advised that their jobs had been abolished and that the chief joint car inspector could not comply with their request; that they petitioned the president of the association and the general manager of each of defendant railroads for redress of their grievances, but were met with refusals. Damages were sought for each of the twenty-five employees, the amount thereof being alleged as $10,000 actual and $10,000 exemplary damages. The first two questions are as follows:

"(1) In determining whatever rights appellants have, if any, under the contract sued upon, is it obligatory on the part of the trial court and the appellate courts of Texas to read into such contract the provisions of Title 45, U. S. C. A.?

"(2) Do the provisions of said Title 45, U. S. C. A. supersede the provisions of the contract sued upon? That is to say, if appellants have any rights under the contract, must appellants seek relief by and through the provisions of Title 45 U. S. C. A.?

We consider these two questions together for the reason that, as we understand it, the parties regard these questions as calling upon this Court for a ruling upon the specific question of whether a certain amendment of Title 45, U. S. C. A., which became effective in June, 1934, many months after the alleged breach of contract, became a part of the contract under which plaintiffs had formerly worked. As we understand the position of the parties here, they all agree that it is a well settled rule that the right of employers and employees to make contracts relating to interstate commerce is subject to the superior right of Congress to legislate upon the subject mat-

ter. We do not, therefore, find it necessary to enter into a discussion of that principle or even to cite the authorities establishing and announcing it. It appears that our precise question arises out of this background. In 1934 Congress amended the Railway Labor Act, Title 45, U. S. C. A. By such amendment in Section 151 et seq., there was created the National Railway Adjustment Board. Subdivision (i) of Section 153 of the amendment reads as follows:

" (i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

The petition did not allege that plaintiffs pursued the course there authorized by appealing to the Adjustment Board, and it is claimed that it was subject to a general demurrer because of the absence therefrom of such allegation.

██ Under the principle above referred to, that the right of Congress to regulate interstate commerce is superior to the right of parties to contract with relation thereto, this amendment became a part of all contracts by railroad companies with their employees subsisting at the time of its effective date. But, according to the certificate, the plaintiffs alleged that they had been discharged eight months before the amendment became effective. In passing on the general demurrer the court must, not only accept such allegations as true, but must also indulge all reasonable intendments in support of their sufficiency. Plaintiffs alleged an effort on their part to present their cases to the authorities named in their contract, but alleged that the defendants wrongfully deprived them of that right by pretending to discharge those agencies to which they should appeal. According to the allegations of the petition, their cause of action, if any they have, is for a breach of contract. They sued, not as employees, but as former employees who had been damaged by being wrongfully discharged. They had no case pending on June 21, 1934. Their means for preparing a record for appeal had been wrongfully taken from them, according

to their allegations. No authority or principle of law with which we are familiar would support a holding that the amendment reached back and brought appellants' case within its terms.

■ The third question is as follows:

"(3) Does the fact that appellants allege a contract of employment that is wholly indefinite as to the term of such employment make of appellants' suit a cause of action upon a contract terminable at the will of the employer?"

In the working agreement, a copy of which was attached to the petition, there appear the following:

### "RULE IV.

"No employee will be discharged on a charge of incompetency after thirty days' service. No joint Car Inspector shall be discharged or suspended until given a fair investigation. He will be furnished with the charges against him in writing 24 hours or more before the time set for investigation to be held. The Chairman of the Committee will be furnished with a copy of the charge at the same time. The accused and the Chairman may summons witnesses that they deem necessary to appear before this investigation. A copy of this investigation will be taken and furnished to the Chairman of the Committee as soon as practical after investigation is closed. Chief Joint Inspector shall have ten days in which to hand the Committee his decision. The accused will remain in service pending this decision."

### "RULE V.

"Any joint car Inspector discharged or suspended without being given an investigation will be returned to work and an investigation held. If the facts of the case prove the man has been unjustly dealt with, he shall be returned to his former position and paid for all time lost."

Obviously, these provisions of the contract constitute a limitation on the right of the employer to discharge the plaintiffs and negative the theory that the contract was one which could be terminated with impunity by the employer at will without notice and hearing.

The foregoing will be certified as our answers to the questions as interpreted in this opinion.

Opinion adopted by the Supreme Court March 20, 1940.

Rehearing overruled May 1, 1940.