**UNITED TRANSPORTATION UNION, and Its Subsidiary, The Texas Legislative Board of the United Transportation Union, Appellants,**

v.

**Eleanor BROWN, Appellee.**

No. 9358.

Court of Appeals of Texas, Texarkana.

July 9, 1985.

Rehearing Denied July 30, 1985.

See also 573 F.Supp. 22.

Mason L. Terry, Terry & Terry, Austin, for appellants.

Hubert L. Gill, Davis, DeShazo & Gill, Austin, for appellee.

Before CORNELIUS, C.J., and BLEIL and CHADICK, JJ.*

CORNELIUS, Chief Justice.

The United Transportation Union appeals from a judgment in favor of Eleanor

---

* Honorable T.C. Chadick, Justice, Supreme Court of Texas, Retired, sitting by Assignment.

Brown. Ms. Brown sued the UTU for wrongful discharge from her employment, alleging that she was terminated without good cause and as a result of a fraudulent breach of confidence by the president of UTU. The jury awarded Brown $266,-902.00 compensatory damages and $15,-206.92 exemplary damages. We will affirm the judgment.

Ms. Brown was secretary to Bill Cowan, director of the Texas Legislative Board of the UTU. She was a member of the Office and Professional Employees International Union, which guaranteed her certain job protection rights. In 1971 the Brotherhood of Locomotive Firemen & Enginemen and the Brotherhood of Railroad Trainmen merged and formed the United Transportation Union. According to Brown's undisputed testimony, Cowan asked her at the time of the merger to continue as his secretary, and promised that if she would resign her membership in the OPEIU and work for him she would come under the "same agreement" as the employees of the International UTU. She specifically asked Cowan about her job protection rights and he assured her that she would lose none of her rights by dropping out of the OPEIU. Some time later, Brown asked Cowan if she could get a copy of the agreement under which she was now working. On being told to write the central offices of the UTU in Cleveland to get the agreement, Brown called Cleveland and asked about the agreement. In response, she later was sent the "Manual of Working Conditions Applicable to International Employees of the United Transportation Union."

Among other things, the manual of working conditions provides that no employee will be demoted without good cause, and it provides for notice and grievance procedures. The court submitted special issues to the jury. Special Issue # 1 asked:

Did B.R. Cowan propose to Eleanor Brown that if she would withdraw from O.P.E.I.U. and continue her employment, then her working conditions would be governed by the same agreement as the office employees in Cleveland, Ohio?

Special Issue # 2 asked:

Did Eleanor Brown accept B.R. Cowan's proposal?

Special Issue # 3 asked:

Did B.R. Cowan propose to Eleanor Brown that if she would withdraw from the O.P.E.I.U. and continue her employment then she would not lose any of the job protection rights that she had under the OPEIU (sic) contract?

Special Issue # 4 asked:

Did Eleanor Brown accept B.R. Cowan's proposal?

The jury answered yes to these issues. In another issue the jury found that Cowan did not have good cause to terminate Brown's employment. Additionally, the court made an express finding that Brown was an international employee of the UTU and was subject to the manual of working conditions for such employees by reason of that position.

Generally, absent contractual limitations, an employment contract providing for an indefinite term of service may be terminated by either party at will, with or without good cause. *East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99 (1888); *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d 536 (Tex.App.—Corpus Christi 1982, no writ). But valid contractual limitations on the right to terminate may be imposed by agreement of the parties. *Mansell v. Texas & Pac. Ry. Co.,* 135 Tex. 31, 137 S.W.2d 997 (1940); *Hardison v. A.H. Beloe Corp.,* 247 S.W.2d 167 (Tex.Civ.App.—Dallas 1952, no writ). The jury's answers to the special issues and the court's finding that Brown was an international employee had the effect of finding a contractual limitation on the right of the UTU to terminate Brown's employment, and thus take this case out of the general employment at will rule.

UTU attacks the factual and legal sufficiency of the jury's answers to the issues noted above. Brown clearly testified that Cowan[1] offered her a job gov-

---

1. It was stipulated that Cowan had authority to bind the union.

erned by the same agreement as the workers in Cleveland, and that he agreed she would not lose any of the job protection rights she presently held if she took the new position. Such testimony is evidence of express contractual limitations upon the employer's ability to discharge her without cause, and we do not find it factually insufficient. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400 (Tex.1981).

■ UTU has not attacked the court's finding that Brown was an international employee of the UTU, nor did it present any evidence that disputed Cowan's offer and Brown's acceptance of employment on the terms she stated. Instead, UTU relies upon a lack of specificity in Brown's testimony, and upon the fact that her job protection rights in the OPEIU were less than those provided by the UTU manual of working conditions, as indications that a binding agreement was not reached. We find, however, that although different inferences could be drawn from the testimony, there was sufficient direct and circumstantial evidence to support the jury verdict. UTU points to the fact that the manual of working conditions could be unilaterally altered by the UTU, but that did not prevent Cowan's agreement from becoming a binding contract. Brown was free to commit her job rights to the provisions of the manual if she chose to do so, even though its terms could be changed without her consent. Considering all the evidence and the record as a whole, we find there was sufficient evidence to support the verdict, and that it is not so against the weight and preponderance of the evidence as to be manifestly unjust. *Wolters v. Wright*, 649 S.W.2d 649 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.).

UTU also contends that the court's deemed finding that the "agreement" Cowan was referring to was the manual of working conditions is not supported by factually or legally sufficient evidence. Among other things, UTU's argument on this point relies on *Reynolds Mfg. Co. v. Mendoza*, supra, for the proposition that a manual of working conditions is not suffi-

cient to avoid the employment at will rule. In *Reynolds* the court reversed jury findings in favor of a discharged employee because, in the words of the court, "There is no evidence of any express agreement which dealt with procedures for discharge of employees," independent of the handbook or manual itself. *Reynolds Mfg. Co. v. Mendoza*, supra. The *Reynolds* court distinguished both *Mansell v. Texas & Pac. Ry. Co.*, supra, and *Hardison v. A.H. Beloe Corp.*, supra, on the basis that they involved express agreements modifying the employment at will relationship between the employer and employee, in spite of the fact that the relationships continued to be for indefinite terms. Here, like in *Mansell* and *Hardison* but unlike *Reynolds*, Brown presented evidence that she and UTU expressly agreed to an employment relationship which preserved at least her OPEIU job protection rights and provided her with the same rights as the international employees in Cleveland.

The jury also found that Hardin, the UTU president, fraudulently made Brown a false promise of confidentiality, and awarded Brown exemplary damages on the basis that in so doing Hardin acted maliciously and in reckless disregard of Brown's rights.

In 1980 Brown reported to Hardin that Cowan might be misappropriating union money. Hardin told Brown that he would keep her role confidential. When Hardin sent an investigator to look into the matter, the investigator confirmed the confidentiality agreement with Brown. Later the investigator told Brown that the union's attorney had told Cowan that she was the informant. The investigator also told her, "It was no slip of the tongue." When Brown confronted Hardin about this he told her that she could not expect him to keep something like that confidential. Within a week of being told that Brown was the informant, Cowan fired her without giving any reason. After Brown's termination Hardin took the position that she was an employee at will and had no recourse. He later assured Brown that he would "look after

her," but when the investigation was completed he claimed he had no authority to reinstate her to her position. Despite many attempts to get her job back Brown was never rehired.

 For Hardin's promise to be fraudulent, it must have been made when he intended not to honor it. In that case the fraud consists in the deception as to an existing fact, i.e., the state of Hardin's mind. That fact may be established by circumstantial evidence taken in connection with the breach, but not by the breach alone. *Turner v. Biscoe*, 141 Tex. 197, 171 S.W.2d 118 (1943). To support an award of exemplary damages, the false promise must have been made maliciously with the intent to deceive or injure, or with heedless and reckless disregard of its consequences to Brown. *Dennis v. Dial Finance & Thrift Co.*, 401 S.W.2d 803 (Tex.1966). We find sufficient evidence to support the findings of fraud and the award of exemplary damages. Reasonable inferences arising from Hardin's statements and actions after the breach of confidence, together with evidence that Hardin first promised confidentiality, then breached it, then denied that he ever could have kept the matter confidential, together with the investigator's comment that it was no slip of the tongue, support a conclusion that Hardin intentionally misled Brown into believing he would keep the matter from Cowan when in fact he knew that to be false.

UTU argues that because Brown knew Hardin would begin an investigation of Cowan's conduct, she knew her role could not be kept confidential, and thus she could not have been defrauded. We cannot agree. The investigation could have been conducted without Cowan being told of Brown's involvement, and that was the gist of the promise.

 Finally, the UTU argues that Brown's cause of action was barred by the statute of limitations. However, the UTU failed to raise the affirmative defense of limitations in any pleading. Although it offered a trial amendment, the trial court never granted permission to file it. Even

when a plaintiff's petition shows the action to be barred, the defendant must either plead limitations or specifically except to the petition's sufficiency to state a cause of action. *Hubler v. City of Corpus Christi*, 564 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Having failed to plead limitations or attack the sufficiency of Brown's pleadings by special exception, UTU waived the defense of limitations.

UTU's points of error are respectfully overruled and the judgment of the trial court is affirmed.