**FEDERAL EXPRESS CORPORATION,**
**Appellant,**

v.

**Marcie DUTSCHMANN, Appellee.**

**No. 10–90–166–CV.**

Court of Appeals of Texas,
Waco.

Aug. 31, 1992.

Rehearing Denied Oct. 21, 1992.

Phillip R. Jones and Jennifer A. Youpa, Jenkens & Gilchrist, Dallas, Connie R. Lewis, Federal Express Corp., Memphis, for appellant.

Jon R. Ker, Hewitt, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Federal Express Corporation appeals an $89,000 judgment entered on a jury verdict in favor of Marcie Dutschmann, a former Federal Express employee. The jury found that Federal Express had terminated Dutschmann in retaliation for making complaints of sexual harassment by other Federal Express employees. The jury also found that Federal Express had agreed to provide her a Guaranteed Fair Treatment Procedure (GFTP) following her termination and that it failed to exercise good faith in conducting the GFTP. Although Federal Express attempted to show that

Dutschmann had falsified records and was thus discharged, the jury was convinced otherwise. The judgment awarded Dutschmann $20,000 actual damages, $50,000 exemplary damages, $19,000 attorney's fees, pre-judgment and post-judgment interest, and attorney's fees in the event of an appeal. We affirm the judgment.

Federal Express asserts five points on appeal: (1) the court erred in submitting and entering judgment on question one inquiring about retaliatory discharge because the evidence is legally insufficient and because the jury's affirmative finding is against the great weight and preponderance of the evidence; (2) the court erred as a matter of law in submitting question two which asked whether an express or implied contract existed between Federal Express and Dutschmann to provide her a GFTP because Texas courts do not recognize an express or implied contract arising from an employee handbook; (3) the court erred in submitting question two and in refusing to submit Federal Express' requested question two and instructions four and five because the trial court failed to submit a question regarding breach of contract; (4) the court erred as a matter of law in submitting question three because Texas courts do not recognize the doctrine of good faith and fair dealing in the employment context; and (5) the court erred in submitting question ten regarding attorney's fees because the question was not properly limited to recovery for authorized causes of action. Also, as a part of points one, two and four, Federal Express complains of the court denying its motion for summary judgment and its motion for directed verdict. Federal Express conceded during oral argument that it had waived its factual-sufficiency points due to its failure to include them in its Motion for a New Trial. *See* Tex.R.Civ.P. 324.

Marcie Dutschmann had been employed by Federal Express, chiefly as a courier, from August 3, 1984, to October 26, 1987. The record indicates that on numerous occasions during her employment, she complained of sexual harassment, including uninvited sexual advances by Aristeo Cuevas, one of her immediate supervisors, sexually suggestive jokes and innuendos, and obscenities scratched into the paint of her delivery truck. On March 18, 1986, Cuevas masturbated in the Federal Express vehicle Dutschmann was driving, and he attempted to force her to participate. She reported this incident and other instances of harassment to Nate Jackson, the senior manager at the Waco station. According to Dutschmann, she was not one of Jackson's favored employees. She also reported Cuevas' inappropriate behavior of March 18th to Dan Kinsinger, operations manager at that time. She notified Jackson's superior in Dallas of the ongoing abuse and discriminatory treatment; however, Jackson told her that she was the source of the problem. Jackson admitted at trial that Dutschmann had complained since 1986 about the way she was treated at Federal Express and that her work had been adversely affected.

Federal Express terminated Dutschmann's employment in October 1987, for allegedly falsifying delivery records. Her employment had previously been terminated on August 18, 1987, under the same charge but was reinstated on September 4. Following her second termination, Dutschmann appealed through the company's internal appeals process, the GFTP. Dutschmann progressed through every step of the grievance process and focused at trial on the manner in which Federal Express administered the GFTP, particularly the Board of Review proceeding. She argues that Federal Express failed to "ensure her fair and equitable treatment" throughout the proceedings and to ensure her "the benefits of due process." Following the Board of Review, Dutschmann filed a complaint against Federal Express with the Texas Commission on Human Rights. She then filed this suit against Federal Express and Nate Jackson, the senior manager at the time of her discharge.

Federal Express asserts in point one that there is no evidence to support the jury's affirmative finding that it terminated Dutschmann in retaliation for making complaints of sexual harassment against other Federal Express employees. Federal Express asserts that Dutschmann failed to set forth and prove a cause of action for retaliatory discharge pursuant to the Texas

Commission on Human Rights Act. *See* TEX.REV.CIV.STAT.ANN. art. 5221k § 5.05 (Vernon 1987). However, Federal Express has waived its complaint to the jury's affirmative response to question one because it failed to distinctly point out to the court any objectionable matter as well as the specific grounds of the objection. *See* TEX. R.CIV.P. 274. The objections made by Federal Express to the charge are as follows in their entirety:

COUNSEL: Your Honor, first of all, we would object to the questions and instructions posed in the jury Questions Nos. 2, 3, and 4. We feel like these deal with areas that are inappropriate on the same basis that I have mentioned in my Motion for Instructed Verdict; and, likewise, we would object to the Court's failure to include certain instructions that we have posed to the Court and certain questions.

Those instructions posed, that we would object to the Court's not including them, would be Instructions Nos. 3, 4, 5, 7, and 13. And the questions, that we would object to the Court not including them, would be Questions 2, 3, 5, 10, and 16.

■ Even if counsel's objections had included an objection to question one, Rule 274 expressly prohibits adoption of objections made to prior questions or instructions in the charge. *See id.* Counsel's attempt in this instance to adopt by reference oral objections presented to the court during the trial and presumably before the jury charge was prepared do not meet the Rule 274 specificity requirements. *Id.; Castleberry v. Branscum,* 721 S.W.2d 270, 276 (Tex.1986). Nor does Appellant's Motion for Instructed Verdict, Motion for Judgment NOV, or its Amendment to the Motion for Judgment NOV reference Federal Express' "no evidence" complaint on appeal regarding the submission or substance of question one. *See Steves Sash & Door Co. v. Ceco Corp.,* 751 S.W.2d 473, 477 (Tex.1988).

■ Even if the complaint had been preserved, the record contains more than a scintilla of probative evidence of a continuing pattern of violations with the employer's knowledge. *See Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). We must accept Dutschmann's testimony as true and totally disregard any contrary testimony; that is, we cannot substitute our view of the credibility of the witnesses for that of the jury in a "no evidence" challenge. *See Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 797 (1951). *See Stafford,* 726 S.W.2d at 16. Considering only the evidence and reasonable inferences that tend to support the jury's finding and disregarding all evidence and inferences to the contrary, we hold that Dutschmann's testimony about the repeated sexual harassment she experienced, her attempts to fend off same, and her complaints to management constitutes more than a scintilla of probative evidence to support the affirmative answer to question one. *See Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988). Point one is overruled.

Federal Express complains in point two that, because Texas courts do not recognize an express or implied employment contract arising from an employment handbook, the court erred as a matter of law in submitting question two. It complains in point three that the court erred in submitting questions two and in failing to submit Federal Express' requested question two and requested instructions four and five because the trial court failed to submit a question regarding breach of contract.

At the inception of her employment, Dutschmann received an Employment Handbook and Personnel Policy and Procedure Manual that expressly stated that her employment was at-will and "would continue as long as it was mutually satisfactory to both parties." The manual specified that no contractual rights were created by the handbook, its use intended only as "a reference." The Policy and Procedures Manual stated under the "Purpose" section that the manual was intended solely as a "guide" for management and employees, that it was "not a contract *of employment,* and [that] no such contract may be implied from its provisions." (Emphasis added). The manual further stated that it could be "modified, amended or deleted by the Com-

pany at any time at its sole discretion without prior notice."

Dutschmann acknowledged in writing that she had received the handbook, that she understood it did not constitute a contract, and that the information provided might need to be changed by Federal Express from time to time. Nevertheless, the section labeled "Guaranteed Fair Treatment Policy" stated that the company would provide an internal grievance process, the GFTP, to "all Federal Express employees and ex-employees" and that it would administer the process fairly. The pertinent procedures for the GFTP as contained in the Policy and Procedure Personnel Manual are:

POLICY It is the policy of Federal Express to have a procedure for handling complaints *which ensures fair and equitable treatment.*

SCOPE All Federal Express Employees and Ex–Employees

GUIDELINES

ELIGIBILITY Any employee who is the recipient of discipline for any reason *will not be denied access to* the Guaranteed Fair Treatment Procedure.

. . . . .

BOARD OF REVIEW/INITIATION A Board of Review is generally appropriate under the following circumstances:

If there is a substantial question as to fairness and/or accuracy in the matter at hand.

If the matter concerns . . . termination in cases in which there is a substantial disagreement of fact.

. . . . .

BOARD OF REVIEW/RESPONSIBILITIES The Chairman of the Board of Review and its members *will adhere* to the following specific guidelines with respect to proper, ethical, expeditious handling of the hearing:

*Ensure* that the action in question was, in fact, consistent with established Company policy and *ensure that the employee has received the benefit of due process.*

Provide a *fair and equitable* recommendation based on *facts* and not on supposition.

Act in an ethical and expeditious manner in providing a decision and a recommendation, which will be based on all evidence presented.

COMPLAINANT/RESPONSIBILITIES The complainant *will participate and be in attendance at all times throughout the hearing* with the exception of the vote, the explanation of the reasoning behind the need for the vote, and discussion of the Committee as deemed necessary by the Chairman.

(Emphasis added).

Notwithstanding the disclaimers and Dutschmann's written acknowledgment, the court submitted question two that inquired whether an express or implied contract existed by which Federal Express contracted to provide her a Guaranteed Fair Treatment Procedure. The jury was instructed:

You are instructed that express contracts arise when the terms are stated by the parties and there is mutual intent to contract; implied contracts arise from the acts and conduct of the parties and that a meeting of the minds is implied from and evidenced by their conduct and course of dealing.

The jury found that such a contract existed.

 We recognize and support the long-standing rule that employment relationships in Texas are at-will, *i.e.,* terminable by either party at any time, with or without cause. *East Line R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99, 102 (1888). We also recognize the general rule that an employee handbook that does not provide a *written representation regarding procedures for discharge of employees* does not modify the at-will relationship. *Hicks v. Baylor University Medical Center,* 789 S.W.2d 299, 301 (Tex.App.—Dallas 1990, writ denied). However, our courts hold that the at-will rule recognizes the possibility that the relationship can be modified when an employee establishes a contract whereby the employer gives up the right to terminate the employment at will. *Wal–Mart Stores, Inc. v. Coward,* 829 S.W.2d

340, 343 (Tex.App.—Beaumont 1992, no writ).

■ Federal Express made extensive written representations to Dutschmann regarding a post-termination right to a review of the reasons for her termination. The jury, by its affirmative answer to question number two, found as a fact that the employment-at-will relationship between Federal Express and Dutschmann was modified by the handbook's post-termination rights and procedure. The court instructed the jury:

> You are instructed that unless the employer and employee have entered into an employment contract, the parties have an employment-at-will relationship. The effect of establishing an employment-at-will relationship is that either the employer or employee may terminate the relationship at any time. The termination can be for any reason, or for no reason, as long as the reason is not an unlawful one. It can be with or without cause. However, *a written or implied contract containing specific limiting disciplinary procedural requirements can change the application of the at-will doctrine.*

(Emphasis added). We hold that, under the particular facts of this case arising from the express language that Federal Express used to grant Dutschmann the GFTP, the court properly submitted question two. Thus, she established a contract whereby Federal Express gave up the right to terminate her at will. *See Wal–Mart Stores, Inc.,* 829 S.W.2d at 343; *Hicks,* 789 S.W.2d at 301; *see also Mansell v. Texas & Pac. Ry. Co.,* 135 Tex. 31, 137 S.W.2d 997, 999–1000 (1940) (holding that a contract between a railroad and its employees negated the at-will nature of the relationship and limited the right of the employer to discharge the employees); *Morgan v. Jack Brown Cleaners, Inc.,* 764 S.W.2d 825, 826 (Tex.App.—Austin 1989, writ denied) (holding that the at-will relationship can be modified by the parties' agreement, including an oral agreement, and that an employer is not entitled to a summary judgment if a

fact issue is raised concerning an agreement that modifies the at-will relationship); *Ramos v. Henry C. Beck Company,* 711 S.W.2d 331, 336 (Tex.App.—Dallas 1986, no writ); *United Transp. Union v. Brown,* 694 S.W.2d 630, 632 (Tex.App.—Texarkana 1985, writ ref'd n.r.e) (holding that a jury finding had the effect of limiting the employer's right to terminate an employment relationship, thus taking the case out of the general employment-at-will rule).

■ Federal Express advances a position that is, in our opinion, untenable. Its handbook would, if read literally, grant its employees a *post-termination* right to a formal review of the facts leading up to termination and a possible right of reinstatement and at the same time deny that the at-will relationship had been modified.[1] Such an interpretation would render the post-termination rights and procedure meaningless. We believe that a distinction can be drawn between employee handbooks that establish policies and procedures to be observed during the employment relationship and those that grant such post-termination rights. The former do not modify the at-will relationship; the latter may modify the relationship. *Hicks,* 789 S.W.2d at 301.

Federal Express should not be allowed to unilaterally disclaim post-termination rights that it has granted to its employees nor be allowed to require the employees, as a condition of employment, to negate the legal effect of the language of its own handbook. On the one hand, Federal Express wants to recruit and retain employees by offering them specific rights, including the GFTP. On the other hand, it wants to say that it is not bound by the grant of those rights. An employer simply cannot have it both ways.

■ Neither are we persuaded by Federal Express' argument that, because it retained the right to modify or even withdraw the post-termination rights, the relationship could not have been altered. If, prior to termination, it had modified or withdrawn the right to the post-termination

---

1. We fail to see how there could be a "substantial disagreement of fact" or "a substantial question as to fairness" concerning the reasons for

termination of an employee, thereby invoking the Board of Review procedure, if the employment was truly "at-will."

review, the employee could accept the new terms or quit. *See Hathaway v. General Mills, Inc.,* 711 S.W.2d 227, 229 (Tex.1986). When it had not modified or withdrawn the right to the post-termination review at the time it terminated Dutschmann as an employee, it should not be permitted to claim that the right never existed; fairness dictates this rule. *See id.*

Federal Express relies on the wrongful discharge cases of *Stiver v. Texas Instruments, Inc.,* 750 S.W.2d 843 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Berry v. Doctor's Health Facilities,* 715 S.W.2d 60 (Tex.App.—Dallas 1986, no writ); and *Vallone v. Agip Petroleum Co., Inc.,* 705 S.W.2d 757 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). In *Stiver* the court affirmed a summary judgment in favor of the employer, but recognized that an employee might prove a written contract that modifies the right to terminate the relationship in "a meaningful and special way." *Stiver,* at 750 S.W.2d at 846. Although it recognized the employee's right to show "an express agreement to the contrary," the *Berry* court affirmed a summary judgment in favor of the employer. *Berry,* 715 S.W.2d at 61. In *Vallone,* the court held that, absent a specific contract term to the contrary, a summary judgment against Vallone must be affirmed. These cases are distinguishable because of the express language that Federal Express used to grant the post-termination right of review to Dutschmann and because the jury found that the at-will relationship was modified.

Federal Express also relies on *Reynolds Mfg. Co. v. Mendoza* for the proposition that even handbooks that discuss "good cause" for termination do not modify the at-will doctrine. *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d 536 (Tex.App.—Corpus Christi 1982, no writ). The language of the handbook in *Reynolds* is factually distinguishable from that used by Federal Express to grant to Dutschmann a post-termination right of review of the reasons for her termination. Federal Express relies on *Joachim v. AT & T Information Systems,* 793 F.2d 113 (5th Cir.1986). The court, without quoting the provision of the employee handbook that Joachim relied on, determined that the *Reynolds* opinion rep-

resented the status of the law in Texas at the time and upheld a summary judgment in favor of AT & T. Thus, we distinguish *Joachim* for the same reasons that we distinguish *Reynolds.*

Finally, Federal Express relies on two federal district court cases in support of its position. They are: *White v. Federal Exp. Corp.,* 729 F.Supp. 1536 (E.D.Va.1990) and *Bowser v. McDonald's Corporation,* 714 F.Supp. 839 (S.D.Tex.1989). In each case, the district court granted a summary judgment on the basis that an employee handbook cannot alter the at-will relationship. In *Bowser,* the district judge states, "[t]here is no dispute that Plaintiff's employment by Defendant was 'at-will....'" Here the jury found that the at-will relationship had been modified. The holding in *White* is more difficult to reconcile, because it involves virtually the same Federal Express handbook as was furnished to Dutschmann. Two factors, however, distinguish the *White* opinion from the facts at hand: the federal district judge determined that no fact issue existed about a modification of the at-will relationship, whereas a jury has found that Federal Express contracted with Dutschmann to alter the at-will relationship and the federal district judge found that "the uncontradicted record shows no breach" of contract, whereas this record demonstrates that Federal Express intentionally violated the express provisions of the GFTP.

■ Due to the lack of specificity of its objections and the tendering of its requests "en masse," Federal Express waived the complaints asserts in point three. *See* TEX. R.CIV.P. 274; *Tempo Tamers, Inc. v. Crow-Houston Four, Ltd.,* 715 S.W.2d 658, 666–67 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Crisp v. Southwest Bancshares Leasing Co.,* 586 S.W.2d 610, 616 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). Although no question was included in the charge expressly addressing a breach of contract by Federal Express, the question of the existence of a contract was submitted and no sufficient objection or tender was made to the omission of a question on breach; thus the element of breach

is deemed found in support of the judgment. *See* TEX.R.CIV.P. 274, 279; *Tempo Tamers, Inc.*, 715 S.W.2d at 666–67.

We overrule points two and three.

■ In point four, Federal Express asserts that the court erred in submitting question number three because Texas does not recognize the doctrine of good faith and fair dealing in the employment context. Although we agree with the general proposition that such a covenant has never been recognized in Texas, we believe that Federal Express has, by granting the GFTP, imposed such a duty upon itself.

The manual states that it is the "policy" of Federal Express to provide an employee "who was the recipient of discipline for any reason" a procedure "which ensures *fair and equitable treatment.*" (Emphasis added.) An integral part of the procedure is a Board of Review, which the manual states is appropriate if the matter concerns "termination" and there exists "a substantial disagreement of fact." The manual specified that the Board of Review (1) would adhere to specific guidelines, (2) provide a *fair and equitable* recommendation based on facts and not on supposition, (3) *ensure that every employee received the benefit of due process,* and (4) act in an ethical and expeditious manner. The manual further guaranteed Dutschmann the right to "participate and be in attendance at all time throughout the hearing." By implementing the GFTP after her employment was terminated, including the detailed "guidelines" and the Board of Review, Federal Express acknowledged its duty to administer the grievance procedure fairly and equitably.

■ The record supports the conclusion that Federal Express intentionally manipulated the Board of Review procedure, over which it had exclusive control, to Dutschmann's detriment by (1) denying her first choices for employee-representation on the Board of Review, (2) removing documents from the case file book after Dutschmann requested that they be included, (3) submitting edited versions of documents, (4) not permitting her to call witnesses, (5) not allowing her to cross-examine witnesses, (6) asking her to leave the meeting in violation of its express representation that she had the right to be present, and (7) including its position on her harassment claims in the case file book after telling her that it would not be discussed.

According to the written procedure guidelines, Dutschmann was allowed to submit the names of six co-workers as potential voting members to hear the case before the Board of Review, three of whom would be selected by the Board of Review Chairman to serve as voting members on the case. Federal Express denied Dutschmann's initial slate of nominees, and she was forced to submit another list of six names of Federal Express employees.

A case file book had been jointly prepared by Dutschmann and a personnel representative of Federal Express assigned to assist Dutschmann in preparing for the Board of Review. The case file book ostensibly contained all materials which Dutschmann deemed relevant to a fair presentation of the case. The case file book actually delivered to Dutschmann and presented to the Board for use during the hearing differed from Dutschmann's compilation in that certain documents which Dutschmann considered relevant had been removed in whole or in part. Portions of documents which Dutschmann had submitted in clean copies had been blacked out in the case file books of the Board members. The day before the proceedings began, thirteen new documents had been inserted, which Dutschmann did not have sufficient time to study and research in order to prepare a response. As a result of Dutschmann's protests, Federal Express finally agreed to delete the new items.

Witnesses for Dutschmann were not allowed to testify, and she was not allowed to cross-examine Cuevas or Jackson, in direct violation of Board of Review procedures specified in the manual.

Dutschmann was told before the Board of Review began that her sexual harassment claims would not be discussed and that she was not to refer to them. Nevertheless, the copy of the case file book Federal Express had forwarded to Dutschmann and those provided to the Board con-

tained a statement of Federal Express' position on the issue. It stated that "the allegations of sexual harassment have been investigated by Ron Watkins of the internal EEO Department and according to Watkins he found no basis [in] fact in these charges." Although she complained, the statement was not deleted.

In addition, the topic of sexual harassment was raised by members of the Review Board asking questions and seeking answers regarding the statement of Federal Express' position contained in the case file book. Dutschmann was asked by the chairman to leave the room during these discussions as well as during Aristeo Cuevas' testimony. Although she voluntarily complied with the chairman's request, such procedure directly contravened the explicit guidelines mandating Dutschmann's presence at all Board proceedings. The same procedure was followed during Nate Jackson's testimony.

Having determined that Federal Express imposed upon itself a duty of good faith and fair dealing by the express language of its Policy and Procedure Manual, we conclude that the court was justified in submitting question number three to the jury. Based on the jury's finding that Federal Express failed to exercise good faith and fair dealing in the conduct of the GFTP, we turn to the propriety of the award of punitive damages.

In circumstances where the duty of good faith and fair dealing is imposed by law, *e.g.*, denial of insurance benefits, the rule is that a breach of the duty of good faith and fair dealing alone will not support an award of punitive damages. *Auto Ins. Co. of Hartford v. Davila*, 805 S.W.2d 897, 908 (Tex.App.—Corpus Christi 1991, writ denied). Punitive damages are recoverable for such a breach under the same principles allowing recovery of those damages in other tort actions—that is, the injured party must show the other party acted with conscious indifference to his rights. *Id.; Trenholm v. Ratcliff,* 646 S.W.2d 927, 933 (Tex.1983).

As we have demonstrated, this record supports the conclusion that Federal Express intentionally manipulated the Board of Review procedure and was thus consciously indifferent to Dutschmann's rights. *See Trenholm,* 646 S.W.2d at 933. We are mindful that no question was presented to the jury inquiring whether Federal Express was consciously indifferent to Dutschmann's rights. However, the jury found that Federal Express did not act in good faith in administering the "Guaranteed Fair Treatment Procedure" and it also found that she is entitled to punitive damages. Because there is factually-sufficient evidence to support a finding that Federal Express was consciously indifferent to her rights, it is deemed in support of the judgment. *See* TEX.R.CIV.P. 279.

We also rely on a prior decision of this court. In *K.W.S. Mfg. Co. Inc. v. McMahon,* this court held that an employer's actions in connection with a wrongful termination were "harsh and oppressive" and were not only a breach of contract but a tort which authorized an award of punitive damages. *K.W.S. Mfg. Co. Inc. v. McMahon,* 565 S.W.2d 368, 373 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). Federal Express' conduct of the GFTP was, as we have demonstrated, "harsh and oppressive."

Finally, the jury's finding and the undisputed facts distinguish this case from others holding that an employee handbook does not per se alter the at-will relationship. At a minimum, Federal Express owed Dutschmann the common-law duty to perform its own grievance procedure—the Guaranteed Fair Treatment Procedure—with care, skill, reasonable expedience, and faithfulness. *See Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508 (1947). Point four is overruled.

Federal Express complains in point five that the trial court erred in submitting question number ten regarding attorney's fees because the question was not properly limited to recovery of attorney's fees for authorized causes of action. However, Federal Express has waived any complaint it might have had to the submission because it failed to specifically object as re-

quired by the rules of procedure. *See* Tex. R.App.P. 52.

The judgment is affirmed.

THOMAS, Chief Justice, concurring and dissenting.

The evidence is legally sufficient, I agree, to support the finding that Dutschmann was discharged by Federal Express in retaliation for filing sexual-harassment complaints. This entitles her to recover not more than two years' back pay and discretionary reasonable attorney's fees. *See* Tex.Rev.Civ.Stat.Ann. art. 5221k, § 7.01(d)(1), (e) (Vernon Supp.1992). Thus, I have no problem with affirming the portion of the judgment awarding $20,000 in back wages and $19,000 in attorney's fees.

I disagree, however, with the affirmance of the award of $50,000 exemplary damages. Article 5221k does not authorize the recovery of punitive damages. *Id.* § 7.01 (Vernon 1987 & Supp.1992). Unless their recovery can be justified under either a contract or tort theory, or under what is called a "contort" theory, then the recovery of exemplary damages is clearly unwarranted. I can find no basis for an award of exemplary damages under any of these theories.

In my view, the evidence conclusively establishes that Federal Express is entitled to a take-nothing judgment on all theories that would possibly support exemplary damages. Accordingly, I would sustain its second and fourth points, in which the company alleges that the court should have granted it an instructed verdict, and reform the judgment to remove the exemplary damages. I would then affirm the judgment as reformed.

### MAJORITY HOLDING

These quotes from the majority opinion fairly illustrate, I believe, the basis for their affirmance of the award of exemplary damages:

- "We hold that, under the particular facts of this case arising from the express language [in the handbook] that Federal Express used to grant Dutschmann the GFTP, the court properly submitted question two. Thus, she established a contract whereby Federal Express gave up the right to terminate her at will."

- "Although no question was included in the charge expressly addressing a breach of contract by Federal Express, the question of the existence of a contract was submitted and no sufficient objection or tender was made to the omission of a question of breach; thus the element of breach is deemed found in support of the judgment."

- "Although we agree with the general proposition that such a covenant [of good faith and fair dealing] has never been recognized in Texas [in the employment context], we believe that Federal Express has, by granting the GFTP, imposed such a duty on itself.... By implementing the GFTP after her employment was terminated, including the detailed 'guidelines' and the Board of Review, Federal Express acknowledged its duty to administer the grievance procedure fairly and equitably."

- "Having determined that Federal Express imposed upon itself a duty of good faith and fair dealing by the express language of its Policy and Procedure Manual, we conclude that the court was justified in submitting question three to the jury. Based on the jury's finding that Federal Express failed to exercise good faith and fair dealing in the conduct of the GFTP, we turn to the propriety of the award of punitive damages."

- "[T]he rule is that breach of the duty of good faith and fair dealing alone will not support an award of punitive damages.... Punitive damages are recoverable for such a breach under the same principles allowing recovery of those damages in other tort actions—that is, the injured party must show the other party acted with conscious indifference to his rights.... Because there is factually-sufficient evidence to support a finding that Federal Express was consciously indifferent to [Dutschmann's] rights, it is

deemed [found] in support of the judgment."

The holdings can be distilled even further by paraphrasing:

- The handbook created a contract right to the grievance procedure that altered Dutschmann's at-will status.
- Federal Express breached the contract.
- The contract created by the handbook contractually imposed the covenant of good faith and fair dealing on Federal Express.
- Federal Express breached the covenant.
- Federal Express acted with conscious indifference to Dutschmann's rights.
- The breach of the contractually imposed covenant of good faith and fair dealing by consciously indifferent acts entitled Dutschmann to exemplary damages.

Make no mistake about it—the majority is upholding an award of punitive damages based on a pure breach of contract, i.e., the breach of what they see as a contractually imposed duty of good faith and fair dealing. They justify the award by considering the nature of the conduct surrounding the breach. They make no pretense of basing the recovery on a breach of an independently and distinctly imposed tort duty.

The majority's analysis is flawed for three reasons. First, it ignores the legal question raised in Federal Express' second point—Did the disclaimers and Dutschmann's acknowledgment that the handbook created no contract between her and the company preclude a contract from ever arising as a matter of law? The majority avoids the legal question by simply saying the jury found that a contract existed.

Second, it confuses the tort duty of good faith and fair dealing imposed by law, the breach of which can support the recovery of tort-type damages, with the duty of good faith and fair dealing inherent in each contract, whose breach will not support tort damages.

Third, it ignores directly-on-point Supreme Court case law unequivocally holding that punitive damages do not flow from the breach of a contractually imposed duty.

The Supreme Court has clearly spoken on the recovery of punitive damages from a breach of contract and prescribed the test, and this area of the law is not, in my opinion, still open for debate or interpretation.

## DISCLAIMERS

Could any contract ever arise between Federal Express and Dutschmann in the face of the disclaimers in the handbook and Dutschmann's express agreement that the handbook created no contract rights? This is the pivotal question. If the disclaimers and acknowledgment precluded any contract from arising, then there was nothing to breach and, even under the majority's view, nothing on which to base an award of exemplary damages.

The majority says:

Federal Express should not be allowed to unilaterally disclaim post-termination rights that it has *granted* to its employees nor be allowed to require the employees, as a condition of employment, to negate the legal effect of the language in its own handbook. On the one hand, Federal Express wants to recruit and retain employees by offering them specific rights, including the GFTP. On the other hand, it wants to say that it is not bound by the *grant* of those rights. An *employer simply cannot have it both ways.*

(Emphasis added).

This approach presumes, without answering the threshold question relating to the legal effect of the disclaimers, that the handbook granted Dutschmann contract rights to the grievance procedure. Although declaring that Federal Express "cannot have it both ways," the majority is nevertheless willing to let Dutschmann have it both ways. Apparently, she can acknowledge the disclaimers, expressly agree that the handbook creates no contractual rights, and then sue and recover on the theory that the handbook indeed created a contract. The provisions in a handbook relating to post-termination procedures become "meaningless," according to the majority, if the parties disclaim any

contractual intent. No more meaningless, perhaps, than the explicit disclaimers and Dutschmann's express agreement that, in my opinion, precluded any contract from arising.

Basic rules of contract law require a legal conclusion that the express disclaimers in the handbook and Dutschmann's acknowledgment prevented any contract from arising. The most elementary rule, of course, is that the parties' mutual agreement is essential to the creation of a contract. *Haws & Garrett G. Con., Inc. v. Gorbett Bros. Weld. Co.,* 480 S.W.2d 607, 609 (Tex.1972). They must communicate their mutual assent to each other. *Garcia v. Villarreal,* 478 S.W.2d 830, 832 (Tex.Civ. App.—Corpus Christi 1971, no writ). Whether there has been the necessary meeting of minds is determined objectively from what the parties said and did, not from their subjective states of mind. *Schawe v. Giles,* 55 S.W.2d 588, 589 (Tex. Civ.App.—San Antonio 1932, writ ref'd); *Adams v. Petrade Intern., Inc.,* 754 S.W.2d 696, 717 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Finally, a contract cannot be implied in fact contrary to the expressed intent or understanding of the parties or contrary to the expressed declaration of the party sought to be charged with a contract duty. *Houston Gen. Ins. Co. v. Lane Wood Indus.,* 571 S.W.2d 384, 392 (Tex.Civ.App.—Fort Worth 1978, no writ).

Thus, for there to be a contract right to the grievance procedure, Federal Express and Dutschmann must have mutually assented to its creation and communicated their assent to each other. Not only did the company expressly negate its assent to the creation of any contract from the handbook, Dutschmann expressly acknowledged Federal Express' disclaimer and expressed her mutual agreement and understanding that the handbook created no contract rights. The only meeting of their minds was on a mutual disclaimer that the handbook created no express or implied contract. Moreover, a contract cannot arise by implication from the handbook because

it would be contrary to the parties' express mutual understanding and contrary to the express declaration of Federal Express, the party sought to be charged.

Disclaimers have the legal effect of preventing the creation of contract rights. *E.g., Hicks v. Baylor University Medical Center,* 789 S.W.2d 299, 302–03 (Tex. App.—Dallas 1990, writ denied) (disclaimer in employee handbook); *Berry v. Doctor's Health Facilities,* 715 S.W.2d 60, 61–62 (Tex.App.—Dallas 1986, no writ) (disclaimer in employee handbook). Generally, any promissory obligation that can be voluntarily assumed can be voluntarily disclaimed. Yudof[1], *Contorts and the Muddled Quest for Bright Lines,* State Bar of Texas Advanced Civil Trial Course Book, § MM at 8, September 1991 [hereinafter *Muddled Quest* ].

One is left to speculate about the basis for the majority's declaring that an employer and employee cannot legally disclaim the existence of a contract arising from a handbook. Is it based on public policy? If so, other courts have failed to see that basis.

I would not so lightly interfere with the right of the employer and employee to contractually agree that a company handbook does not create legal rights, especially on the ephemeral ground that an employer "just shouldn't be allowed to do that." Accordingly, I would follow those cases that recognize the legal effect of disclaimers and rule as a matter of law that the handbook created no express or implied contract. *See id.*

This case law also includes *White v. Federal Exp. Corp.,* 729 F.Supp. 1536, 1547–49 (E.D.Va.1990), *aff'd,* 939 F.2d 157 (4th Cir. 1991). There the court held that the identical disclaimers and employee acknowledgment involved here precluded any contract to the grievance procedure from ever arising. *Id.* 729 F.Supp. at 1549. The majority admits that the "holding in *White* is more difficult to reconcile, because it involves virtually the same Federal Express handbook as was furnished to Dutschmann." Their difficulty is self-evident. How do

---

**1.** Dean Mark G. Yudof, University of Texas School of Law.

you distinguish a case (1) involving the same handbook, (2) containing identical disclaimers and acknowledgments, (3) deciding the same legal questions presented in this case, but (4) expressly rejecting the contract analysis used by the majority to reach a contrary result? Nevertheless, they attempt to distinguish *White* on the ground that the federal court held as a matter of law that no fact issue existed about a modification of the at-will relationship. What they overlook, of course, is that no fact issue existed in *White* precisely because the disclaimers, the employee's acknowledgment, and the company's unilateral right to modify or withdraw the grievance procedure precluded any contract right from arising as a matter of law. *See id.*

The majority opinion places great emphasis on the trial court's submitting to the jury the fact question whether the handbook created a contract between Federal Express and Dutschmann and the jury's affirmative answer that it did. The jury cannot answer the legal question raised by Federal Express's second point—Did the disclaimers and Dutschmann's acknowledgment preclude a contract from arising as a matter of law? Logically, there could be no fact issue for the jury to answer if the disclaimers legally precluded any contract from arising.

### PUNITIVE DAMAGES

### CONTRACT THEORY

Assuming that there was a contract and a breach, the Supreme Court has unequivocally prescribed the test for determining whether Federal Express' conduct creates a contract or tort action or both—i.e., a "contort":

> If the defendant's conduct ... would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct ... would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

*See Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991). Stated another way, "[W]hen a party must prove the contents of its contract and must rely on the duties created therein, the action is 'in substance an action *on the contract,* even though it is denominated an action for negligent performance.'" *Id.* at 496 (Gonzalez, J., concurring); *also, International Printing Pressmen and Ass'ts Un. v. Smith,* 145 Tex. 399, 198 S.W.2d 729, 735 (1946).

Dutschmann necessarily had to plead and rely on a contract right to the grievance procedure. Certainly, Federal Express had no liability apart from such a contract for failing to provide her with one. Under the circumstances, Dutschmann's action rests solely in contract because the company's conduct would only create liability based on a breach of the contract. *See DeLanney,* 809 S.W.2d at 494.

Assuming that the handbook created a contract and that it was breached, Dutschmann was not entitled to recover exemplary damages regardless of how capricious, intentional, flagrant, or malicious the conduct surrounding the breach. *See Manges v. Guerra,* 673 S.W.2d 180, 184 (Tex.1984); *Amoco Production Co. v. Alexander,* 622 S.W.2d 563, 571 (Tex.1981). The nature of the breaching party's conduct is irrelevant and is to be disregarded. Frank J. Cavico, Jr., *Punitive Damages For Breach of Contract—A Principled Approach,* 22 St. Mary's L.J. 357, 370 (1990). (This law review article contains an excellent discussion of the theory behind exemplary damages and their general inapplicability to a breach of contract under Texas case law.) None of the traditional exceptions to this general rule are applicable here: breach of a contract to marry, breach of contract by a public utility, breach of contract by a fiduciary, breach of contract accompanied by independent fraudulent-type conduct, or breach of contract resulting in a concomitant tort. *See id.* at 376.

Only two exceptions could possibly be applicable under the facts: breach by a fiduciary and breach resulting in an independent tort. The fraud exception is not

available here because the tort of fraud must be separately pleaded and proved. *See C & C Partners v. Sun Exploration & Prod.*, 783 S.W.2d 707, 719–20 (Tex.App.—Dallas 1989, writ denied). Moreover, the jury never found any element of fraud, and no such findings can be deemed in favor of the judgment. *See* Tex.R.Civ.P. 279. Therefore, assuming that the majority is correct on its contract theory, the breach itself must have amounted to an independent tort resulting in a distinct tortious injury with actual tort-type damages before Dutschmann could recover exemplary damages. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986). There could be no award of exemplary damages here because the jury did not award any actual tort-type damages. *See id.*

## GOOD FAITH AND FAIR DEALING

In Question 3 the jury found that Federal Express failed to exercise good faith and fair dealing in administering the grievance procedure. The company's fourth point is that an implied covenant of good faith and fair dealing does not arise from an employment relationship as a matter of law.

Texas has recognized that the law implies a tort duty of good faith and fair dealing on certain contract-based relationships:

> The common thread among the cases in which courts have done so is a special relationship between the parties to the contract. That special relationship either arises from the element of trust necessary to accomplish the goals of the undertaking, or has been imposed by the courts because of an imbalance of bargaining power. [The court then lists the areas in which Texas recognizes such a special relationship to exist.] ... In all the cases cited above, the duty of good faith and fair dealing *springs from the relationship, not from the contract*.... In situations where the duty of good faith and fair dealing does exist, public policy would dictate that it cannot be disclaimed.

*English v. Fischer*, 660 S.W.2d 521, 524–25 (Tex.1983) (emphasis added). Breach of

the imposed-by-law duty constitutes a *tort* and will indeed support an award of exemplary damages if the conduct of the breaching party is in conscious disregard of a party's rights. *Arnold v. Nat. County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 168 (Tex.1987) (holding that "exemplary damages and mental anguish damages are recoverable for a breach of the duty of good faith and fair dealing under the same principles allowing recovery of those damages *in other tort actions*") (emphasis added in the quote from the opinion).

However, the Restatement (Second) of Contracts recognizes a common-law duty: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (1979). A breach of this duty is nothing more than a simple breach of contract that does not entitle the wronged party to recover exemplary damages. *Muddled Quest*, State Bar of Texas Advanced Civil Trial Course Book, § MM at 5. Thus, when this duty is breached, the general rule in Texas would apply—i.e., the conduct of the breaching party is irrelevant and is to be disregarded. *See Manges*, 673 S.W.2d at 184.

The majority acknowledges at the outset that no Texas court has ever recognized that the relationship of employer-employee is so special that the law imposes a tort duty of good faith and fair dealing upon the employer. Even the California courts, which have been at the forefront in implying a tort duty of good faith and fair dealing in virtually all contract-based relationships, have expressly refused to do so in the *usual* employment relationship. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988). In fact, the Texas Supreme Court has rejected the California implied-tort-duty approach in the strongest possible language: "The novel concept ... would abolish our system of government according to settled rules of law and let each case be decided upon what might seem 'fair and in good faith,' by each fact finder." *English*, 660 S.W.2d at 522. Logically, the duty of good

faith and fair dealing does not arise from the ordinary employer-employee relationship because, otherwise, the at-will doctrine would be completely abrogated. *Day & Zimmermann, Inc. v. Hatridge,* 831 S.W.2d 65, 71–72 (Tex.App.—Texarkana, 1992, n.w.h.); *Casas v. Wornick Co.,* 818 S.W.2d 466, 468–69 (Tex.App.—Corpus Christi 1991, writ denied).

Seizing upon the language in the so-called contract, that Federal Express would administer the grievance procedure fairly and equitably, the majority first declares that the company contractually imposed upon itself the duty of good faith and fair dealing. Then, holding that the evidence will support a finding that the company acted in conscious disregard of Dutschmann's rights in breaching the contractually imposed duty, the majority deems that finding in support of the judgment and affirms the award of exemplary damages. Thus, as already noted, they clearly base the award of exemplary damages upon the breach of a contractually imposed duty.

This ingenious approach confuses (1) the tort duty of good faith and fair dealing implied by law on a contract-based relationship so special that one party must act as a fiduciary toward the other and (2) the common-law duty of good faith and fair dealing that the Restatement (Second) of Contracts says is inherent in each contract.

A breach of the first duty meets the *DeLanney* test for the recovery of tort-type damages: "If the defendant's conduct ... would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort." *DeLanney,* 809 S.W.2d at 494. The tort liability springs from the parties' relationship, not the contract. *English,* 660 S.W.2d at 524. Under the majority's analysis, however, Federal Express' liability arose solely from the breach of a contractually imposed duty, not from a duty independently imposed by law and extraneous to the contract.

Likewise, a breach of the duty of good faith and fair dealing recognized by the Restatement (Second) of Contracts meets the *DeLanney* test for an action based

exclusively on contract: "[I]f the defendant's conduct ... would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *DeLanney,* 809 S.W.2d at 494. As already noted, the majority confuses this contractually imposed duty with the tort duty of good faith and fair dealing imposed by law. Thus, because Federal Express breached the duty of good faith and fair dealing contractually imposed upon itself, and its liability would depend solely upon the contract, Dutschmann's suit rests exclusively on the contract. *See id.*

Application of the *DeLanney* test to the majority's contract analysis forces a conclusion that Federal Express' breach of a contractually imposed duty of good faith and fair dealing would not support the recovery of tort-type damages. *See id.* Consequently, the nature of Federal Express' conduct, if there was a contract to breach, is irrelevant. *See Manges,* 673 S.W.2d at 184.

## TORT OR "CONTORT" THEORY

At the conclusion of its discussion of punitive damages and of the reason why their award is justified by Federal Express' breach of contract, the majority makes passing mention of the common-law duty discussed in *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 510 (1947), referring to this quote: "Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract."

If the majority relies on the common-law duty in *Scharrenbeck* to hold that breach of the Federal Express contract also resulted in a tort—i.e., a "contort"—then they misinterpret the quote. As Justice Gonzalez notes in his concurring opinion in *DeLanney,* the overly broad language in *Scharrenbeck* does not mean that every breach of contract results in a tort. *DeLanney,* 809 S.W.2d at 496 (Gonzalez, J., concurring). This same caveat about misinterpreting *Scharrenbeck* is echoed elsewhere. *Muddled Quest,* State Bar of Tex-

as Advanced Civil Trial Course Book, § MM at 11. In fact, Dean Yudof puts the *Scharrenbeck* common-law duty in its proper perspective:

> The *Scharrenbeck* duty [to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done] is important in a contract case only where a party has allegedly engaged in misfeasance or some allegedly substandard performance, and the contract specifies either no standard of care or a quite minimal standard.... *Scharrenbeck* then tells us, for purposes of determining whether a breach has occurred, that the minimum *contractual* standard, implied as a matter of law, is one of performance "with care, skill, reasonable expedience and faithfulness the thing agreed to be done."

*Id.* § MM at 13–14. Thus, the common-law duty of care recognized in *Scharrenbeck*, which is implied by law in all contracts, is the legally mandated minimum standard of contract performance. *Id.* § MM at 14. It is not a common-law tort duty. Therefore, violation of this common-law duty of minimum performance results in a breach of contract but not the breach of a distinctly imposed tort duty. *Id.*

Accordingly, I believe Federal Express' second point should be sustained on the ground that the court erred when it denied the company an instructed verdict based on conclusive evidence that the company was not liable to Dutschmann for exemplary damages on a contract theory. *See De-Lanney*, 809 S.W.2d at 494; *Neuhaus v. Kain*, 557 S.W.2d 125, 136 (Tex.Civ.App.– Corpus Christi 1977, writ ref'd n.r.e.).

Although the majority avoided the issue by using a contract analysis, I would also sustain the fourth point, which asserts that the court should have granted Federal Express an instructed verdict on the tort theory of good faith and fair dealing. *See Neuhaus*, 557 S.W.2d at 136. I would reform the judgment by deleting exemplary damages and then affirm it.